OPINION OF THE COURT
Alexander, J.
Plaintiffs decedent Francis V. Cervoni, died as a result of injuries sustained at a stock car racing event held on August 28, 1982, at Islip Speedway, a facility then being operated by Suffolk Motordome, Inc.
During a "figure-eight” race sanctioned by the National Association for Stock Car Auto Racing, Inc. (NASCAR), while working in the pit area on the infield of the track, attempting to fix a disabled vehicle, Cervoni was struck by a race car owned by Car Care Center, Inc., and driven by Robert Krollage who lost control of his vehicle. Cervoni subsequently died from his injuries.
Plaintiff commenced this negligence and wrongful death action against Krollage, Car Care Center, Inc., and Suffolk Motordome, Inc. These defendants cross-claimed each against the other and also asserted, inter alla, as affirmative defenses to plaintiffs complaint, releases signed by Cervoni in which he agreed to release and hold harmless the owners, promoters, lessors and others from any liability resulting from their negligence at any NASCAR sanctioned event.
The Appellate Division affirmed Supreme Court’s order denying plaintiff’s motion to dismiss the affirmative defenses asserted by the defendants and third-party defendants based upon these releases and granting cross motions to dismiss all claims against the defendants and third-party defendants. *98 Those courts rejected plaintiffs contention that the releases were void under the provisions of General Obligations Law § 5-326 and held that statute inapplicable because plaintiffs decedent was not a "user” of the premises within the contemplation of General Obligations Law § 5-326. The courts also concluded that under the terms of the releases, plaintiffs decedent assumed the risks inherent in his participation as a mechanic in the infield pit area of the raceway. We agree that the statute is not applicable and affirm the order of the Appellate Division solely for that reason.
I
In April 1982 decedent signed an application for NASCAR membership and license as a mechanic and paid a $55 license fee. As required by the NASCAR rules, he also applied for registration in the benefit plan of the competitor liaison bureau of NASCAR, agreed to abide by all NASCAR rules and decisions and designated his mother as his death beneficiary under the plan. The agreement signed by Cervoni provided that the limit of liability for any "accidental injuries (including death), which are the result of external and violent means * * * sustained] in NASCAR sanctioned events,” would be the scheduled benefit payable under the plan.* The agreement also provided that:
"[i]n consideration of the acceptance by NASCAR of my license application, issuance of license, my being permitted on speedway or raceway premises of any NASCAR sanctioned event, or any of the foregoing, I, for myself, my heirs, next of kin, personal representatives and assigns, forever release, remise, and forever discharge and agree to save and hold harmless and indemnify NASCAR, the promoters presenting races or other events under NASCAR sanction, the owners and lessees of premises on which NASCAR sanctioned events are presented, the participants thereon, and the owners and/or sponsors and manufacturers of all racing equipment used in NASCAR sanctioned events, the officers, directors, agents, employees and servants of all of them, including NASCAR officials and NASCAR members, of and from all *99 liability, claims actions and possible causes of action whatsoever including negligence of any of the foregoing that may accrue to me or to my heirs, next of kin and personal representatives, from every and any loss damage and injury (including death) that may be sustained by my person and property while in, about and en route into and out of premises where NASCAR sanctioned events are presented.”
On the day of the race, just prior to entering the Islip Speedway where he was to serve as a mechanic with the pit crew for a stock car entered in a NASCAR sanctioned race, Cervoni signed a document on which the words: "This is a Release of Liability” were printed in various places. This document was signed by a list of persons including Cervoni, who acknowledged that they had "inspected the track premises,” that they "knew the risks and dangers inherent in entering the premises and participating in, observing the qualifying, and practicing for motor racing events [and] realize that conditions may become more hazardous while each of us are in the premises * * * [that] each enter[s] the premises voluntarily and assumes every risk for loss, damage or injury (including death)”.
The document further provided that each person signing it: agreed to "release[ ], remise[ ] and * * * hold harmless * * * NASCAR * * * the promoters * * * the owners, [and] sponsors * * * from all liability claims, demands, causes of action and possible causes of action whatsoever, arising out of or related to any loss, damage or injury (including death) that may be sustained by our respective persons or property * * * while in, on, en route to, from, or out of said premises from any cause whatsoever including negligence of any of the foregoing.”
II
In the absence of a contravening public policy, exculpatory provisions in a contract, purporting to insulate one of the parties from liability resulting from that party’s own negligence, although disfavored by the law and closely scrutinized by the courts, generally are enforced, subject however to various qualifications (see, Gross v Sweet, 49 NY2d 102; Van Dyke Prods. v Eastman Kodak Co., 12 NY2d 301; Ciofalo v Vic Tanney Gyms, 10 NY2d 294). Where the language of the *100 exculpatory agreement expresses in unequivocal terms the intention of the parties to relieve a defendant of liability for the defendant’s negligence, the agreement will be enforced (id., at 297). Such an agreement will be viewed as wholly void, however, where it purports to grant exemption from liability for willful or grossly negligent acts or where a special relationship exists between the parties such that an overriding public interest demands that such a contract provision be rendered ineffectual (see, Gross v Sweet, 49 NY2d 102, supra, and cases cited therein).
Prior to the enactment of General Obligations Law § 5-326, releases absolving owners and promoters of auto raceways and other recreational facilities from liability for injuries resulting from their negligence were generally upheld (see, Ciofalo v Vic Tanney Gyms, 10 NY2d 294, supra; Johnson v Thruway Speedways, 63 AD2d 204; Rotary v Spencer Speedway, 47 AD2d 127; Church v Seneca County Agric. Socy., 34 NY2d 571, affg for reasons stated at 41 AD2d 787; Gervasi v Holland Raceway, 40 AD2d 574; Solodar v Watkins Glen Grand Prix Corp., 36 AD2d 552; Theoroux v Kedenburg Racing Assn., 50 Misc 2d 97, affd 28 AD2d 960, lv denied 20 NY2d 648).
However, in 1976, the Legislature enacted section 5-326 of the General Obligations Law to provide that:
"[ejvery covenant, agreement or understanding in or in connection with, or collateral to, any contract, membership application, ticket of admission or similar writing, entered into between the owner or operator of any pool, gymnasium, place of amusement or recreation, or similar establishment and the user of such facilities, pursuant to which such owner or operator receives a fee or other compensation for the use of such facilities, which exempts the said owner or operator from liability for damages caused by or resulting from the negligence of the owner, operator or person in charge of such establishment, or their agents, servants or employees, shall be deemed to be void as against public policy and wholly unenforceable” (L 1976, ch 414, § 1).
Plaintiff argues that General Obligations Law § 5-326 renders these releases void as against public policy and wholly unenforceable; that the statute applies to all "users” and does not distinguish between participants and spectators.
*101 We conclude however that the statute is inapplicable to the release contained in the NASCAR license application and liaison bureau plan benefit registration and unless some other reason is shown to exist sufficient to justify disallowing that release as a bar to plaintiffs claims, no recovery is available against these defendants. There is no evidence in this record from which one could determine that NASCAR is an "owner or operator of any * * * place of amusement or recreation or similar establishment” or that the fee paid in connection with that application was "a fee or other compensation for the use of [any] such facilit[y]”. Rather, as is evident from the application itself, the fee was for a mechanic’s license in the Grand American Stock Car, Modified & Late Model Sportsman division of NASCAR.
Plaintiff asserts no basis other than the provisions of General Obligations Law § 5-326 upon which to deny enforcement of this release as against NASCAR or the other entities identified as the beneficiaries thereof (see, Gross v Sweet, 49 NY2d 102, supra; Ciofalo v Vic Tanney Gyms, 10 NY2d 294, supra). Thus the complaint and all cross claims were properly dismissed.
In view of this determination, we need not consider whether Cervoni assumed the risks attendant upon being present in the infield pit area of the raceway, nor need we consider whether he was a "user” of the facility within the meaning of General Obligations Law § 5-326 (see, Howell v Dundee Fair Assn., 73 NY2d 804).
Accordingly, the order of the Appellate Division should be affirmed, with costs.
Chief Judge Wachtler and Judges Simons, Kaye, Titone, Hancock, Jr., and Bellacosa concur.
Order affirmed, with costs.

 The scheduled benefit totaled $17,500 which was paid to the decedent’s mother as provided for in the plan.