150

CAROL A. OWEN, Individually and as Administratrix of the Estate of JOHN OWEN, Deceased, Plaintiff, v R.J.S. SAFETY EQUIPMENT, INC., et al., Defendants and Third-Party Plaintiffs-Respondents. ORANGE COUNTY FAIR SPEEDWAY, INC., et al., Third-Party Defendants-Appellants. (Action No. 1.)

CAROL A. OWEN, Individually and as Administratrix of the Estate of JOHN OWEN, Deceased, Respondent, v ORANGE COUNTY FAIR SPEEDWAY, INC., et al., Appellants. (And a Third-Party Action.) (Action No. 2.)

Third Department, July 11, 1991

## APPEARANCES OF COUNSEL

*Weisfuse & Weisfuse (Martin H. Weisfuse* of counsel), for Orange County Fair Speedway, Inc.

*Finkelstein, Levine, Gittlesohn & Tetenbaum (George A. Kohl II* and *Duncan W. Clark* of counsel), for Carol A. Owen.

*Drake, Sommers, Loeb, Tarshis & Catania, P. C. (Stephen Gaba* and *Joseph A. Catania, Jr.,* of counsel), for R.J.S. Safety Equipment, Inc.

## OPINION OF THE COURT

CASEY, J.

Plaintiff seeks to recover damages arising out of the death of her husband, which occurred when the race car he was driving went out of control and struck the perimeter wall of the racetrack at the Orange County Fair Speedway, where decedent had participated in races for a number of years. Included among the defendants sued by plaintiff are the owner and operator of the racetrack and the sponsor of the race in which decedent was to participate on the day of the accident.* In their answer, these defendants asserted the affirmative defenses of release or waiver and express assumption of risk based upon an agreement signed by decedent prior to the race. Upon the parties' cross motions for summary judgment, Supreme Court, *inter alia,* dismissed the affirmative defenses of release or waiver and express assumption of risk, resulting in this appeal.

The agreement, signed by decedent and all other participants prior to the race and entitled "Release and Waiver of Liability and Indemnity Agreement", contained two relevant provisions: the first, whereby each race participant "HEREBY

---

* Defendants in action No. 2 are third-party defendants in action No. 1. For the sake of simplicity they will be referred to as defendants throughout the decision.

RELEASES, WAIVES, DISCHARGES AND COVENANTS NOT TO SUE" a variety of parties, including the race promoter and owner and operator of the racetrack, from all liability "whether caused by the negligence of the releasees or otherwise"; and the second, whereby each race participant "HEREBY ASSUMES FULL RESPONSIBILITY FOR AND RISK OF BODILY INJURY, DEATH OR PROPERTY DAMAGE due to the negligence of releasees or otherwise". General Obligations Law § 5-326 provides, in pertinent part that: "Every * * * agreement * * * in or in connection with * * * any contract, membership application, ticket of admission or similar writing, entered into between the owner or operator of any * * * place of amusement or recreation, or similar establishment and the user of such facilities, pursuant to which such owner or operator receives a fee or other compensation for the use of such facilities, which exempts the said owner or operator from liability * * * shall be deemed to be void as against public policy and wholly unenforceable."

The parties and Supreme Court focused mainly on the question of whether decedent had paid a fee to participate in the race. It is undisputed that only licensed members of defendant Drivers Independent Race Tracks, Inc. (hereinafter DIRT) were eligible to participate in the race. Drivers, owners and crew members were required to pay a $40 membership fee to DIRT in return for a nontransferable license which had to be shown at each race in order to get a pit pass. In *Lago v Krollage* (78 NY2d 95), the Court of Appeals held that such a fee was for a license and was not a fee for use of a recreational facility within the meaning of General Obligations Law § 5-326. Here, however, plaintiff submitted proof in evidentiary form that decedent paid an additional fee. Plaintiff stated that in addition to the DIRT membership fee, decedent "was required to pay an admittance and/or insurance fee each and every time that he entered a race".

Another DIRT member explained the membership fee as follows: "It's more like what they call a pit license, you know. It's like if you have their pit license it costs you say $10 to get in the pits every week. If you don't have the pit license it costs you maybe $14 to get in the races every week." A fellow race car driver who was personally familiar with the admittance procedures and fee policies in effect at the race track on the date of decedent's accident stated, "During that period, in order to drive a car similar to the one operated by [decedent] on July 10, 1986, in a race, it was necessary to pay a fee for entry into the pit area." The only evidence in opposition

consists of the affidavit of the executive vice-president of DIRT, which states: "Whereas there is a general admission fee, [decedent] paid no fee for participating in the race. The release here was in connection with such participation for which no fee was paid."

■ It is undisputed, therefore, that decedent paid a fee in addition to the membership or license fee. Whether that additional fee was a general admission fee or a fee for entrance into the pit area is irrelevant. Decedent could not participate in the race without first gaining admission into the racetrack facility and he could not gain admission into the facility without first paying the admission fee. In these circumstances, defendants' assertion that no fee was paid by decedent to participate in the race is insufficient to create a triable issue of fact since plaintiff presented undisputed evidence that the owner or operator received a fee or other compensation for the use of the facility within the meaning of General Obligations Law § 5-326.

■ Next, defendants argue that decedent was not a user of a recreational facility within the meaning of General Obligations Law § 5-326 because he was a professional race car driver acting in furtherance of the enterprise promoted by DIRT, of which decedent was a member. This argument does not appear to have been raised at Supreme Court and the record contains no evidence to support defendants' claim that decedent was a professional race car driver. As we recently said, "There is more than ample authority to the effect that an automobile raceway is an establishment within the meaning of this statute" *(Smith v Lebanon Val. Auto Racing,* 167 AD2d 779, 780). That being so, it seems only logical to conclude that one who drives a race car at such an establishment is ordinarily a user of the facility within the meaning of the statute *(see, e.g., Miranda v Hampton Auto Raceway,* 130 AD2d 558). In *Howell v Dundee Fair Assn.* (73 NY2d 804), the Court of Appeals held that a volunteer who was at the race track solely for the purpose of serving as a member of the fire and rescue squad is not a user of the facility within the meaning of General. Obligations Law § 5-326. The Second Department has applied this ruling to a mechanic in the pit area *(Lago v Krollage,* 157 AD2d 49, *affd* 78 NY2d 95, *supra),* but the Court of Appeals affirmed the dismissal of the complaint in that case on other grounds; we decline to extend the ruling to a driver.

■ There is also no support in the record for the conclusion

that decedent's participation in auto racing was in further-ance of the speedway venture and not a recreational pursuit. On the contrary, the record establishes that decedent pursued the sport of auto racing as a hobby or avocation, not as a business or vocation. Although he occasionally won trophies, decedent had no net earnings from racing, and there is no evidence that decedent was entitled to share in any of the proceeds of the DIRT-sponsored races. Nor is there evidence that decedent's membership in DIRT was for any purpose other than to gain entry to the track so that he could pursue auto racing as a hobby or recreational activity. In particular, there is no evidence that decedent was a member of DIRT so that he could participate in a business venture involving the entertainment of spectators. Nor should decedent's 19 years of experience as a race driver preclude application of General Obligations Law § 5-326. Any user who pursues a recreational activity for 19 years is likely to become well familiar with the risks associated with that activity, but the statute contains no distinction between experienced and inexperienced users.

■ Defendants also contend that irrespective of the enforce-ability of the release or waiver provision of the agreement, the express assumption of risk is a separate and distinct provision of the agreement which is not affected by the public policy embodied in General Obligations Law § 5-326. We disagree. The statute applies to agreements which exempt the facility's owner or operator from liability for damages caused by the negligence of the owner, operator or person in charge of the facility, and the purported effect of the express assumption of risk provision is to exempt defendants from liability for bodily injury, death or property damage due to defendants' negli-gence.

■ Lastly, we reject defendants' contention that apart from the express assumption of risk, the facts of this case establish implied assumption of risk as a matter of law. "As a general rule, participants properly may be held to have consented, by their participation, to those injury-causing events which are known, apparent or reasonably foreseeable consequences of the participation" (Turcotte v Fell, 68 NY2d 432, 439). The doctrine applies not only to any facet inherent in the activity, but also to any open and obvious condition of the place where the activity is carried on, provided the injured party, given his skill and experience at the activity, knew of the injury caus-ing defect and appreciated the resultant risk (see, Maddox v City of New York, 66 NY2d 270, 277-278). In the case at bar,

plaintiff alleges that the design and construction of the retaining wall failed to direct decedent's car back onto the track and caused the car to become airborne, thereby increasing the risk of serious injury or death. Although decedent's experience at the racetrack may have provided him with knowledge of the placement and condition of the retaining wall, the evidence presented by the parties is insufficient to determine whether, as a matter of law, decedent was aware of and appreciated the enhanced risk *(see, Maddox v City of New York, supra,* at 278-279). Accordingly, Supreme Court properly ruled that the issue was one for the jury to determine *(see, supra,* at 279).

LEVINE, J. (dissenting). We respectfully dissent. In our view, the owner and operator of the racetrack and sponsor of the races (hereinafter defendants) have a complete defense in the release and express assumption of risk signed by decedent prior and as a condition to his participation in racing at the track on the day of his fatal accident. We would hold that, irrespective of whether decedent paid a fee in order to race his car at the track, the release decedent executed was not invalidated by General Obligations Law § 5-326 because his status was not that of a "user" of a "pool, gymnasium, place of amusement or recreation, or similar establishment", within the purpose or contemplation of that section.

The record clearly established that decedent was an experienced race car driver who was well familiar with the risks associated with that activity. Decedent's widow, plaintiff herein, testified at an examination before trial that decedent had been engaged in auto racing for 19 years, raced weekly on the track where the accident occurred and had won trophys and prize money. He was a member of defendant Drivers' Independent Race Tracks, Inc., the auto racing organization that sponsored the races in which decedent drove. The release decedent signed was in consideration for being permitted to participate in the races at the track and not for his admission as a spectator to the races. All the foregoing facts are set forth and emphasized in the moving papers submitted in support of defendants' motion for summary judgment.

The legislative history of General Obligations Law § 5-326 (L 1976, ch 414, § 1) establishes that it was a consumer protection measure based upon an assessment that members of the general public patronizing proprietary recreational and amusement facilities are commonly either entirely unaware of the existence of exculpatory clauses in admission tickets or

membership applications or are unappreciative of the legal consequences thereof *(see,* Governor's Bill Jacket, L 1976, ch 414, § 1).

Decedent was not a patron user of the recreational or amusement establishment involved here. Rather, he was a knowledgeable, experienced participant, fully aware of the risks as to which he waived suit, and whose participation was in furtherance of the speedway venture. As such, decedent was simply not a member of the class General Obligations Law § 5-326 was designed to protect and, hence, the release he signed was effective as a complete defense *(see, Howell v Dundee Fair Assn.,* 73 NY2d 804, 806; *Smith v Lebanon Val. Auto Racing,* 167 AD2d 779, 780-781; *Lago v Krollage,* 157 AD2d 49, 52-53, *affd on other grounds* 78 NY2d 95; *see also, Van Amerogen v Donnini,* 78 NY2d 880; *cf., Beardslee v Blomberg,* 70 AD2d 732).

For the foregoing reasons, we would reverse Supreme Court's order and grant defendants' motion for summary judgment.

MAHONEY, P. J., and WEISS, J., concur with CASEY J.; LEVINE and MERCURE, JJ., dissent in an opinion by LEVINE, J.

Ordered that the order is affirmed, with costs.