OPINION OF THE COURT
 

 Bellacosa, J.
 

 This case is about the effort of appellant H. Uribe, Inc. to re
 
 *338
 
 cover for an alleged theft from its safe-deposit box rented from defendant Merchants Bank of New York. Cash, gems and other items, worth approximately $2,000,000, were allegedly missing or stolen.
 

 The issue on appeal is whether the term “valuable papers,” among the items specified in the rental agreement as allowed for storage in the box, may be interpreted to include currency or cash. We conclude that “valuable papers” in this juridical context and contest is unambiguous as used in this rental agreement, is sufficiently specific and exclusive in its usage, and was not intended to encompass legal tender. Thus, the defendant bank is not liable for the allegedly missing currency.
 

 L
 

 Defendant Merchants Bank’s standard safe-deposit box rental agreement provides in pertinent part:
 

 “The safe is leased
 
 solely
 
 for the purpose of keeping securities, jewelry,
 
 valuable papers,
 
 and precious metals
 
 only,
 
 and the Renters agree not to use the said safe for any other purpose” (emphasis supplied).
 

 Paragraphs (7) and (12) of the bank’s Safe Deposit Department Rules and Regulations also contain language limiting the bank’s potential liability:
 

 “It is expressly agreed that this Lease is not to be construed to establish any relation of bailor and bailee between Renters and Bank, and that Bank has no knowledge of and exercises no supervision over the deposit of property, examination or removal of any property at any time contained in the Safe. Renters assume all risks arising out of the deposit of property or securities in the Safe. Renters expressly waive every presumption of law that loss shall have occurred through Bank’s negligence, and agree that
 
 Bank shall not be liable for any loss sustained by Renters unless the loss was caused by some specific, clearly proven and willful act of Bank.
 
 Bank shall not be liable for any act or omission of persons not employed by it” (emphasis supplied).
 

 In December 1990, Hernando Uribe, a wholesale gem dealer, leased a box at the Manhattan West 47th Street branch of Merchants Bank of New York. One year later, title to the box
 
 *339
 
 was transferred to his corporate entity, plaintiff-appellant, H. Uribe, Inc.
 

 In a transaction on November 30, 1992 at Merchants Bank, Hernando Uribe sold 15 emeralds of 78 carats weight to a Korean purchaser. Uribe had allegedly received the emeralds on consignment from a Colombian gem dealer. Uribe claims that he placed the entire cash proceeds of the sale in the safe-deposit box, expecting to remit the money to the consignor of the merchandise when the latter returned to New York a few days later.
 

 On December 4, 1992, the cash, gems and other property were reportedly stolen from the safe-deposit box. Uribe originally sued in his individual and corporate capacity, but only H. Uribe, Inc. is now involved on this appeal. The prayer for relief seeks damages specifically for an unrecovered $170,270 in cash, which was part of the $555,000 allegedly stored in the box. Merchants Bank moved for partial summary judgment to dismiss the claim insofar as it was directed against the bank for recovery of the missing cash. Supreme Court granted partial summary judgment, dismissing the missing currency claim.
 

 The Appellate Division affirmed (239 AD2d 128). It concluded that “the clear qualifying language of the safe deposit box rental agreement, which expressly limited authorized items for deposit ‘only’ and ‘solely to those listed, was unambiguous and unequivocally excluded currency as an authorized item for deposit”
 
 (id.,
 
 at 129). The Presiding Justice dissented in part on the ground that the average depositor would not “appreciate * * * the crucial distinction between valuable paper and valuable papers” and could believe that “currency, undoubtedly a type of valuable paper, was expressly permitted”
 
 (id.,
 
 at 130). The dissent further urged that “the provision upon which the bank presently relies expresses no limitation of liability whatsoever”
 
 (id.,
 
 at 131).
 

 IL
 

 Appellant concedes that “at first blush ‘valuable papers’ might be thought of as referring only to various kinds of legal or business documents.” It nonetheless suggests that “valuable papers” is an ambiguous term that may be read to include the singular usage “paper.” It urges, therefore, that the phrase would connote and import its own recognized intrinsic value, like currency and cash. That would, however, constitute a semiotic and substantive transformation.
 

 
 *340
 
 In usual parlance and understanding, the term “valuable papers” is customarily limited to various kinds of legal or business documents
 
 (see, Goncalves v Regent Intl. Hotels,
 
 58 NY2d 206, 217, n 2 [quoting Bouvier’s Law Dictionary 1080 (Baldwin’s Students ed 1940) (defining “safe” as “receptacle * * * for containing money, valuable papers, or the like”)];
 
 Flores v Mosler Safe Co.,
 
 7 NY2d 276, 279;
 
 Matter of Robinson,
 
 257 App Div 405, 407;
 
 cf, Matter of Swade,
 
 65 App Div 592, 596; Black’s Law Dictionary 1551 [6th ed 1990];
 
 compare,
 
 Banking Law § 234 [9] [authorizing savings banks to “rent() safe deposit boxes in which to keep personal property and papers of any kind”]; General Business Law § 200 [permitting deposit of
 
 “money,
 
 jewels, ornaments, bank notes, bonds, negotiable securities or precious stones” in hotel, motel, inn or steamboat safes or safe-deposit boxes] [emphasis added]; General Construction Law § 39 [personal property includes “chattels,
 
 money,
 
 things in action, and all written instruments themselves”] [emphasis added]).
 

 Traditional rules of construction further enlighten our analysis and prompt our conclusion. In the rental agreement at issue, “valuable papers” is included among a list of depositable items, exclusively specified as “jewelry,” “securities” and “precious metals.”
 

 The principle of
 
 ejusdem generis
 
 (of the same kind) instructs that “valuable papers” in this context should be given a limited interpretation
 
 (see, Matter of Riefberg,
 
 58 NY2d 134, 141-142;
 
 see also,
 
 McKinney’s Cons Laws of NY, Book 1, Statutes § 239 [b]). A narrow sweep is emphasized by two adverbs, “solely” and “only,” used within the same sentence.
 

 Thus, we are not persuaded by appellant Uribe’s argument that paper money and stacked bills, because they are not expressly excluded, may be treated as included within the term of art — “valuable
 
 papers”
 
 — (see, McKinney’s Cons Laws of NY, Book 1, Statutes § 240;
 
 see also, Two Guys from Harrison-N. Y. v S.F.R. Realty Assocs.,
 
 63 NY2d 396, 404). That notion is further dispelled by another canon of interpretive construction:
 
 inclusio unius est exclusio alterius
 
 (the inclusion of one is the exclusion of another). This maxim more readily comports with our view that the omission of “cash,” “currency,” “legal tender” or “paper money,” in the context of the surrounding precisely limited and specific language and exclusive listings, is intentional and unambiguous. Therefore, the term “valuable papers” should not be enlarged and transformed by the courts to allow the deposit of cash, a specific authorization the box
 
 *341
 
 rental agreement failed to specify. The definition this commercial dealer now proposes rests on an impermissibly “strain [ed reading] to find an ambiguity which otherwise might not be thought to exist”
 
 (Loblaw, Inc. v Employers’ Liab. Assur. Corp.,
 
 57 NY2d 872, 877).
 

 IIL
 

 It is universally understood and accepted that a bank is authorized to rent safe-deposit boxes “upon such terms and conditions as may be prescribed” (Banking Law § 96 [3] [b];
 
 see, Gaita v Windsor Bank,
 
 251 NY 152;
 
 Radelman v Manufacturers Hanover Trust Co.,
 
 61 Misc 2d 669;
 
 Goldbaum v Bank Leumi Trust Co.,
 
 543 F Supp 434 [SD NY]). To be sure, the commercial terms may not be unconscionable or violative of a supervening public policy
 
 (see, Lombardo v Manufacturers & Traders Trust Co.,
 
 120 AD2d 941, 942;
 
 Goldbaum v Bank Leumi Trust Co.,
 
 543 F Supp 434,
 
 supra).
 
 None of that is involved or claimed to be at issue in this case.
 

 Next, an exculpatory provision ordinarily will be enforced when its language “expresses in unequivocal terms the intention of the parties to relieve a defendant of liability for the defendant’s negligence”
 
 (Lago v Krollage, 78
 
 NY2d 95, 100;
 
 see, Seaboard Sur. Co. v Gillette Co.,
 
 64 NY2d 304, 311). Although “ambiguities * * * are * * * to be construed against the [drafter], particularly when found in an exclusionary clause”
 
 (Ace Wire & Cable Co. v Aetna Cas. & Sur. Co.,
 
 60 NY2d 390, 398), it is well established that “when the meaning of [a] * * * contract is plain and clear * * * [it is] entitled to [be] enforced according to its terms * * * [and] not to be subverted by straining to find an ambiguity which otherwise might not be thought to exist”
 
 (Loblaw, Inc. v Employers’ Liab. Assur. Corp.,
 
 57 NY2d 872, 877,
 
 supra).
 

 This Court has held that “ ‘reasonable expectation and purpose of the ordinary business [person] when making an ordinary business contract’ ” serve as the guideposts to determine intent
 
 (Album Realty Corp. v American Home Assur. Co.,
 
 80 NY2d 1008, 1010 [quoting
 
 Bird v St. Paul Fire & Mar. Ins. Co.,
 
 224 NY 47, 51]). Thus, the “tests to be applied * * * are common speech * * * and the reasonable expectation and purpose of the ordinary business [person],” in the factual context in which terms of art and understanding are used, often also keyed to the level of business sophistication and acumen of the particular parties
 
 (Ace Wire & Cable Co. v Aetna Cas. & Sur. Co., supra,
 
 60 NY2d, at 398;
 
 see, Michaels v City of
 
 
 *342
 

 Buffalo,
 
 85 NY2d 754, 757;
 
 Miller v Continental Ins. Co.,
 
 40 NY2d 675, 676).
 

 IV.
 

 Plaintiff-appellant H. Uribe, Inc. would supplant these formidable propositions for this case by suggesting that it is not unusual for gem merchants to hold large sums of cash in safe-deposit boxes for short periods of time. Even assuming that is so, this claimed custom of the gem trade should not be imputed to the average merchant and should not supersede the more generally applicable rules for deciding this case.
 

 We conclude that the average commercial dealer would more likely and ordinarily secure cash by deposit in accounts, not by stacking the cache in a safe-deposit box. Uribe’s theory, in any event, should not be allowed to trump the more usual general practices and expectations of those who trade in the marketplace and use commercial storage mechanisms. The defendant bank should not have to stand, therefore, for the currency loss since legal tender (a term of art, among other synonyms, to aptly describe the lost commodity and its unique value) was not a specified item for authorized storage in the box, within the “valuable papers” term (another distinct term of art), as it is used in the lease.
 

 Because interpretive language “should not compel resort to a magnifying glass and lexicon”
 
 (Gross v Sweet,
 
 49 NY2d 102, 107) to discern its legal import and consequences, we are satisfied to apply the more usual, plain and common meaning of the key term in the rental lease. In sum, therefore, we agree that the Appellate Division properly concluded that the safe-deposit box rental agreement, used and controverted in this case, excludes cash, currency or legal tender and provides the bank with a cognizable rejection of Uribe’s claim for loss of that kind of contents from the safe-deposit box.
 

 Accordingly, the order of the Appellate Division should be affirmed, with costs, and the certified question answered in the affirmative.
 

 Chief Judge Kaye and Judges Titone, Smith, Levine, Ciparick and Wesley concur.
 

 Order affirmed, etc.