William SCRIVENER and Alyce Scrivener, Plaintiffs,

v.

SKY'S THE LIMIT, INC., Defendant.

No. 98 Civ. 3296(BDP).

United States District Court, S.D. New York.

June 1, 1999.

Robert M. Ginsberg, Ginsberg & Brome, P.C., New York City, for plaintiffs.

Daniel Donnelly, Garrison's Landing, Garrison, NY, for defendant.

## MEMORANDUM DECISION AND ORDER

BARRINGTON D. PARKER, Jr., District Judge.

Plaintiffs William Scrivener and his wife Alyce Scrivener sue the defendant Sky's the Limit ("STL") for negligence and, *inter alia*, loss of companionship due to injuries William Scrivener incurred while parachuting at STL. STL moves pursuant to Fed.R.Civ.P.Rule 56 for summary judg-ment. For the reasons stated below, the motion is granted.

## BACKGROUND

The following facts are undisputed. In April 1997 Alyce Scrivener bought her husband William Scrivener skydiving lessons at STL. On April 27, 1997 Scrivener signed a Release and Indemnification Agreement. The release was a double-spaced, seven page document with each paragraph separately numbered and beginning with a heading in bold and underlined capital letters. The "Release and Discharge" section, paragraph three stated:

> In consideration of the services rendered herein, and access to the equipment and facilities of the Orange County Airport, Participant specifically acknowledges and represents to STL, SLS, the County of Orange, Jeff Root, Eastern Aviation Services, Inc., all title owners, licensees, and concessionaires of the Orange County Airport, the United States Parachute Association, and all officers, directors, agents, employees, instructors, pilots, jump masters and the owner of the aircraft and land utilized for parachuting and skydiving activities (hereinafter collectively referred to as "Released Parties") THAT SKYDIVING AND PARACHUTING IS AN ULTRA–HAZARDOUS ACTIVITY and Participant expressly assumes all risk of injury and releases the Released Parties from any and all liabilities, claims, injuries and damages arising out of participation in parachuting and skydiving activities, including but not limited to, losses, claims or liabilities caused by the **PASSIVE OR ACTIVE NEGLIGENCE** of the Released Parties, or defects in the equipment, premises or facilities used.

(Emphasis supplied). Paragraph seven titled "Assumption of the Risk" stated:

> Participant expressly, specifically and voluntarily assumes all risk of death, personal injury or property damage sus-

tained while participating in parachuting and/or skydiving activities, including the risk of passive or active negligence by the Released Parties, or hidden, latent or obvious defects at the Orange County Airport or dropzone, or in the equipment or aircraft used.

Additionally paragraph ten titled, "Disclaimer on Instruction and Training" stated:

Because of the nature of the sports of parachuting and skydiving, Participant understands that it is difficult or impossible for an instructor to determine with any degree of certainty that Participant has been properly trained to participate in the aforesaid sports or that Participant fully grasps and comprehends the instruction and training presented. Furthermore, Participant expressly understands and acknowledges that stability and body position can drastically affect the operation of parachutes. Moreover, Participant expressly understands and acknowledges that it is impossible for any instructor to predict or contemplate how each participant will react under the high speed conditions and stress which accompany the sports of parachuting and skydiving. For that reason, the Released Parties herein disclaim any warranty, express or implied, as to the adequacy of training provided to Participant, and Participant has been expressly advised of such disclaimer.

Scrivener also took a "First jump course test" which had the following questions:

40. When making a parachute jump, a possible situation could result in:

a) Broken bone or bones.

b) Partial or total paralysis.

c) Sprains, scrapes, dislocations and/or hospital admittance.

d) Death.

e) All of the above.

f) None of the above.

Scrivener answered "e) All of the above." Question forty-one was:

41. Do you understand and accept, the release form you just signed.

a) Yes.

b) No.

Scrivener answered "a) Yes." Question 46 was:

46. Are you aware of the potential dangers and risks of skydiving and are you ready to take the risk.

a) Yes.

b) No.

Scrivener answered "a) Yes."

On June 22, 1997, William Scrivener was receiving skydiving instruction at STL. Scrivener performed three jumps with his instructor and while executing his fourth and first solo jump he landed on his back and was severely injured. Scrivener claims that he was injured due to the "negligent giving of improper instructions by instructor(s)." Based on the release and test answers, STL moves for summary judgment on Scrivener's negligence claim.

## DISCUSSION

A motion for summary judgment should only be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Hayes v. New York City Dep't. of Corrections,* 84 F.3d 614, 619 (2d Cir.1996); *Bryant v. Maffucci,* 923 F.2d 979, 982 (2d Cir.1991). The court is to perform "the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *McNeil v. Aguilos,* 831 F.Supp. 1079, 1082 (S.D.N.Y.1993) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)); *Hayes,* 84 F.3d 614 at 619.

In determining whether a genuine issue of material fact exists, a court must resolve all ambiguities in the light most favorable to, and draw all reasonable inferences in favor of, the party opposing the motion. *Wernick v. Federal Reserve Bank of New York,* 91 F.3d 379, 382 (2d Cir.1996); *In re State Police Litigation,* 88 F.3d 111, 123 (2d Cir.1996). A finding of disputed material facts that could reasonably be resolved in favor of either party precludes summary judgment. *Wernick,* 91 F.3d at 382 (quoting *Anderson v. Liberty Lobby,* 477 U.S. at 250, 106 S.Ct. 2505).

Generally, the burden is on the moving party to demonstrate that there is no genuine dispute respecting any material fact and that he is entitled to judgment as a matter of law. *In re State Police Litigation,* 88 F.3d at 123; *Gallo v. Prudential Residential Services, Limited Partnership,* 22 F.3d 1219, 1223 (2d Cir.1994). To successfully oppose a motion for summary judgment, the responding party "must set forth facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

In the absence of contravening public policy, exculpatory provisions in a contract, purporting to insulate one of the parties from liability resulting from that party's own negligence, although disfavored by the law and closely scrutinized by the courts, generally are enforced, subject however, to various qualifications. *Lago v. Krollage,* 78 N.Y.2d 95, 99, 571 N.Y.S.2d 689, 575 N.E.2d 107 (1991) (citing *Gross v. Sweet,* 49 N.Y.2d 102, 424 N.Y.S.2d 365, 400 N.E.2d 306 (1979)). Where the language of the exculpatory agreement expresses in unequivocal terms the intention of the parties to relieve a defendant of liability for the defendant's negligence, the agreement will be enforced. *Id.* Such an agreement will not be enforced, however, where it purports to exempt liability for willful or grossly negligent acts or where a special relationship exists between the parties such that an overriding public interest renders the exculpatory clause unenforceable. *Id.*

Here, the language of the release and indemnification agreement expresses in unequivocal and clear terms the intention of the parties to relieve STL and its instructors from liability caused by passive and active negligence. *See* Release and Indemnification Agreement, Paragraph Three. Scrivener even successfully took an examination attesting to his comprehension of the release and of the potential injuries from skydiving. Accordingly, the release is enforceable. *See Lux v. Cox,* 32 F.Supp.2d 92, 100 (W.D.N.Y. 1998) (granting summary judgment and holding exculpatory agreement releasing the race car driving school from liability for negligence valid because language clearly expressed the intent of the parties); *McDuffie v. Watkins Glen Int'l, Inc.,* 833 F.Supp. 197, 202 (W.D.N.Y.1993) (granting summary judgment denying race car driver's negligence claim because of valid release); *Watts v. Country Cycle Club, Inc.,* 237 A.D.2d 350, 655 N.Y.S.2d 422 (1997) (affirming grant of summary judgment because language of release clearly expressed the intention of the parties to relieve the defendant of liability for injuries sustained by plaintiff due to defendant's negligence); *Chieco v. Paramarketing, Inc.,* 228 A.D.2d 462, 643 N.Y.S.2d 668 (2nd Dep't 1996) (reversing denial of defendant's summary judgment motion because plaintiff's release and waiver for a paragliding lesson valid despite plaintiff's allegation that he did not read or understand the document); *Baschuk v. Diver's Way Scuba, Inc.,* 209 A.D.2d 369, 618 N.Y.S.2d 428 (2nd Dep't 1994) (affirming grant of summary judgment for the defendant because release signed for scuba diving instruction unequivocally expressed parties' intention to relieve defendant from liability for personal injuries due to defendant's negligence).

Scrivener maintains, however, that the release is void under New York General Obligations Law § 5–326 which provides:

> [e]very covenant, agreement or understanding in or in connection with, or

collateral to, any contract, membership application, ticket of admission or similar writing, entered into between the owner or operator of any pool, gymnasium, place of amusement or recreation, or similar establishment and the user of such facilities, pursuant to which such owner or operator receives a fee or other compensation for the use of such facilities, which exempts the said owner or operator from liability for damages caused by or resulting from the negligence of the owner, operator or person in charge of such establishment, or their agents, servants or employees, shall be deemed to be void as against public policy and wholly unenforceable.

The legislative history of § 5–326 establishes that

it was a consumer protection measure based upon an assessment that members of the general public patronizing proprietary recreational and amusement facilities are commonly either entirely unaware of the existence of exculpatory clauses in admission tickets or membership applications or are unappreciative of the legal consequences thereof.

*McDuffie*, 833 F.Supp. at 202 (quoting *Owen v. R.J.S. Safety Equip.*, 169 A.D.2d 150, 156, 572 N.Y.S.2d 390 (3d Dep't 1991), *aff'd*, 79 N.Y.2d 967, 582 N.Y.S.2d 998, 591 N.E.2d 1184 (1992)).

Scrivener contends that under § 5–326 a material question of fact exists as to whether STL was a recreation center. In opposition to this motion, Scrivener has included brochures from STL describing its services and STL has submitted a Reply Affidavit claiming that the activities the brochures describe are instructional and not recreational. It is clear, however, that Scrivener was at STL for instructional activity as opposed to at a recreational facility as contemplated by § 5–326. Scrivener's affidavit states, "In April 1997 my wife gave me a birthday present to take skydiving lessons at 'Sky's The Limit' ... After we paid the fee, I signed numerous documents which were required before I was allowed to take my first lesson."

New York courts have found § 5–326 inapplicable where the plaintiff is injured while participating in instructional, rather than recreational, sporting activities, and the fee paid was tuition for a course of instruction, as opposed to the use fee for recreational facilities contemplated by the statute. *See Lux*, 32 F.Supp.2d at 99 (although racetrack was a place of recreation, § 5–326 was not implicated, because the plaintiff was involved in a driving school at the racetrack and had paid a fee to the school); *Chieco*, 228 A.D.2d at 462, 643 N.Y.S.2d 668 (§ 5–326 not applicable because plaintiff did not pay a fee to enter admission into a place of recreation but purchased paragliding equipment and then received lessons in conjunction with that purchase); *Baschuk*, 209 A.D.2d at 369, 618 N.Y.S.2d 428 (affirming grant of summary judgment for negligence claim for injuries incurred while taking a scuba diving course because, "defendant's private swimming pool was used for instructional, not recreational or amusement purposes. Moreover, the tuition fee paid by the plaintiff for a course of instruction is not analogous to the use fee for recreational activities contemplated by [§ 5–326]."); *but see Wurzer v. Seneca Sport Parachute Club*, 66 A.D.2d 1002, 411 N.Y.S.2d 763 (1978) (holding that Seneca Sport Parachute Club was a place of recreation under § 5–326 based on the plaintiff's uncontroverted assertions in his affidavit, the club's statement of purposes in its certificate of incorporation, and the club's name). Thus, STL is entitled to summary judgment because the release clearly stated the intention of the parties to relieve STL and its instructors of liability and § 5–326 is not applicable.

## CONCLUSION

Summary judgment is granted. The Clerk of the Court is directed to enter judgment for the defendant.