**Russell T. RAY**

v.

**CREDIT SUISSE FIRST BOSTON CORPORATION.**

No. Civ. JFM-02-960.

United States District Court, D. Maryland.

May 14, 2002.

---

William C. Sammons, William Stuart Heyman of Tidings & Rosenberg, LLP, Adam J. Safer, Martin D. Edel, Miller and Wrubel PC, New York City, for plaintiff.

Mark D. Gately, Gil A. Abramson, Mark Spencer Saudek, Hogan and Hartson LLP, Baltimore, MD, for Defendant.

## MEMORANDUM

MOTZ, District Judge.

Now pending are cross motions to compel arbitration by Plaintiff, Russell T. Ray, and Defendant, Credit Suisse First Boston Corporation ("CSFB"). Ray seeks to arbitrate his claims before the American Arbitration Association pursuant to an employment agreement, dated June 25, 1999. CSFB seeks to arbitrate all claims pursuant to an Employee Dispute Resolution Program ("EDRP") contained in a letter dated November 26, 2001. For the rea-

sons that follow, I will grant Ray's motion and deny CSFB's motion.

### I.

In June 1999, CSFB persuaded Ray to join CSFB as a managing director and head of its global health care division. (Ray Aff. ¶ 8.) Ray signed an employment agreement on June 25, 1999 (the "employment agreement") that outlined his duties and compensation. (*See* Ray Aff., Ex. A.) The employment agreement included a provision under which the parties agreed to submit all disputes arising out of Ray's employment and termination to binding confidential arbitration, to be held in Baltimore, Maryland, before a three-person arbitration panel in accordance with the Commercial Arbitration Rules of the American Arbitration Association. (Ray Aff., Ex. A ¶ 9.) The arbitration provision also set forth that CSFB would promptly pay all costs and expenses, including attorneys' fees, incurred by Ray in resolving any claim unless the claim is determined to have been brought in bad faith or without any reasonable basis. (*Id.*)

On March 1, 2001, Ray signed a Leadership Incentive Program ("LIP") letter under which he agreed to forego his minimum total compensation for 2001 in consideration for CSFB guaranteeing him higher minimum compensation and participation in LIP. (*See* Ray Aff. ¶ 18; LIP award letter, Ray Aff., Ex. C; LIP agreement, Ray Aff., Ex. D.) The LIP agreement stated that any disputes relating to the LIP program or the LIP award letter would be resolved pursuant to CSFB's already existing United States EDRP. (Ray Aff., Ex. D ¶ 9.1.) The EDRP sets forth a three-part process under which Ray would first submit his grievance to CFSB, then proceed with non-binding mediation and finally, if necessary, commence arbitration before the American Arbitration Associa-

tion with a one-person panel in New York under the EDRP rules. (Ray Aff. ¶ 47.)

On November 26, 2001, Ray signed a letter terminating the LIP and reducing his minimum compensation. (Ray Aff., Ex. F.) In part, this letter stated that "[Ray] shall continue to be subject to the Employee Dispute Resolution Policy applicable in [his] jurisdiction with respect to any disputes under this letter or otherwise." (*Id.* ¶ 4.)

CSFB terminated Ray in March 2002 after Ray refused to agree to changes in his employment duties. Ray now seeks to arbitrate grievances surrounding the termination.

## II.

█ CSFB concedes that the November 26 letter, except where it contradicts, and thus supercedes, the original employment agreement, reinstates the provisions of the employment agreement. CSFB asserts that paragraph four of the November 26 letter, specifically the phrase "or otherwise," extends the EDRP to all grievances. Ray interprets the November 26 letter to mean that the EDRP only applies to grievances arising out of the LIP agreement or the November 26 letter itself.

I find that paragraph four of the November 26 letter does not extend the EDRP to all grievances. Paragraph four states that "[Ray] shall *continue to* be subject to the Employee Dispute Resolution Policy applicable in [his] jurisdiction with respect to any disputes under this letter or otherwise." (Ray Aff.Ex. F) (emphasis added). As Ray notes, CSFB simply could have removed "continue to" from paragraph four and unambiguously stated that "[Ray] shall be subject to the Employee Dispute Resolution Policy ..." However, CSFB chose to include the phrase

"continue to" and that phrase cannot be ignored. *See Brooke Group Ltd. v. JCH Syndicate 488,* 87 N.Y.2d 530, 640 N.Y.S.2d 479, 663 N.E.2d 635, 638 (1996) ("The words and phrases used by the parties must, as in all cases involving contract interpretation, be given their plain meaning. . . ."); *Sullins v. Allstate Ins. Co.,* 340 Md. 503, 667 A.2d 617, 619 (1995) ("Words are given their 'customary, ordinary, and accepted meaning,' unless there is an indication that the parties intended to use the words in a technical sense.").[1] Ray could not "continue to" be subject to the EDRP for all grievances because he was only subject to the EDRP for grievances arising out of the LIP agreement.

█ In any event, paragraph four is at the very least ambiguous. In both Maryland and New York, contract ambiguities are to be construed against the drafter—in this case, CSFB. *See Uribe v. Merchants Bank of New York,* 91 N.Y.2d 336, 670 N.Y.S.2d 393, 693 N.E.2d 740, 743 (1998); *I.A. Constr. Corp. v. Equiptec, Inc.,* 95 Md.App. 574, 622 A.2d 206, 208–09 (1993). For this reason alone, Ray is entitled to prevail.

A separate order is attached.

## ORDER

As stated in the accompanying memorandum, it is, this *14th* day of May 2002

ORDERED

1. Plaintiff's motion to compel arbitration is granted;

2. Defendant's motion to compel arbitration is denied; and

3. This case is closed.

---

1. Because the parties agree that there is no material difference between Maryland and New York law on the contract interpretation question, it is unnecessary to decide the choice of law issue.