**COMMERCIAL UNION INSURANCE COMPANY as subrogee of Michael Cantamessa and The Employers' Fire Insurance Company as subrogee of Charles Durso, Plaintiffs,**

v.

**BLUE WATER YACHT CLUB ASSOCIATION, John Quattrocchi, Thomas Sclwanter, and Barbara Kahn, Defendants.**

**No. 01CV8590 (ADS)(ARL).**

United States District Court, E.D. New York.

Nov. 5, 2003.

Nicoletti Hornig Campise & Sweeney by Val Wamser, of counsel, New York City, for Plaintiffs.

Speyer & Perlberg, LLP by Debra Ann Urbano, of counsel, Melville, NY, for Defendant Blue Water Yacht Club Association.

Kelly, Rode & Kelly, LLP by Thomas W. Ledwith, of counsel, Mineola, NY, for Defendant John Quattrocchi.

Mendes & Mount, LLP by Patrick J. Maloney, of counsel, New York City, for Defendant Thomas Schwanter.

Feldman, Rudy, Kirby & Farquharson, P.C. by Doreen J. Spagnuolo, of counsel, Westbury, NY, for Defendant Barbara Kahn.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

Plaintiffs Commercial Union Insurance Company ("Commercial") as subrogee of Michael Cantamessa ("Cantamessa") and The Employers' Fire Insurance Company ("Employers' Fire") as subrogee of Charles Durso ("Durso") allege that the defendants the Blue Water Yacht Club Association ("Blue Water"), John Quattrocchi ("Quattrocchi"), Thomas Schwanter ("Schwanter") and Barbara Kahn ("Kahn") are liable for damages to the motor boats of Cantamessa and Durso caused during a fire at the Blue Water indoor storage facility. The claims include negligence, breach of bailment and breach of contract. By Memorandum of Decision and Order dated January 17, 2003 (the "Order"), the Court denied Blue Water's motion to dismiss the complaint for lack of subject matter jurisdiction and for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. ("Fed. R. Civ. P."). The Court concluded that it had admiralty jurisdiction over the plaintiffs' contract claim pursuant to 28 U.S.C. § 1333(1). Furthermore, contrary to Blue Water's contention, the Court held that the terms of the licensing agreement in question and its exculpatory provision, purporting to disclaim liability on the part of Blue

Water, does not bar the plaintiffs' negligence claim.

Familiarity with the facts of this case is assumed. *See Comm. Union. Ins. Co. v. Blue Water Yacht Club Assn.*, 239 F.Supp.2d 316 (E.D.N.Y.2003). Presently before the Court is Blue Water's motion requesting reconsideration of the portion of the Order rejecting its argument that the plaintiffs failed to state a claim. In support of its motion, Blue Water argues that the Court should follow the "well-reasoned decision of Justice Joseph" *in Roche v. Blue Water Yacht Club*, No. 14462/2002 (Sup.Ct. Nassau County Feb. 26, 2003), a case arising out of the same fire and involving the same licensing agreement, which concluded that Roche's negligence claims were barred because the terms of the agreement and its exculpatory provision "plain[ly] and unambiguous[ly]" disclaims liability. *See* Defs. Motion at ¶ 8. Blue Water also submitted two recent state court decisions, also arising out of the same fire and involving the same agreement, in which Blue Water's motions to dismiss the respective complaints were granted based upon the same exculpatory provision in issue here. *See Amica Mut. Ins. Co., et al. v. Schwanter and Blue Water Yacht Club*, Index No. 38904/02 (Dist. Ct. Nassau County May 20, 2003); *State Farm Fire & Casualty Co., et al. v. Zodiac of North Amer., Inc., et al.*, Index No. 19406/02 (Sup.Ct. Nassau County Aug. 27, 2003).

## I. DISCUSSION

Motions for reconsideration are governed by Rule 6.3 of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York. Rule 6.3 provides:

A notice of motion for reconsideration . . . shall be served within ten (10) days after the docketing of the court's determination of the original motion. There shall be served with the notice of motion a memorandum setting forth concisely the matters or controlling decisions which counsel believes the court has overlooked. . . . No oral argument shall be heard unless the court directs that the matter shall be reargued orally. No affidavits shall be filed by any party unless directed by the court.

Local Civ. R. 6.3.

On January 17, 2003, the Clerk of the Court entered the Order denying Blue Water's motion to dismiss. On May 5, 2003, more than three months later, Blue Water filed the instant motion which was supported by an affidavit rather than the required memorandum of law.

Blue Water contends that the instant motion is not bound by Local Rule 6.3 because the *Roche* decision, upon which its motion was based, was not issued until February 26, 2003. Blue Water further argues that its motion is properly before the Court because Blue Water advised the Court on April 3, 2003 that it intended to bring a motion for reconsideration and Magistrate Judge Lindsay responded that "any motion for reconsideration of the District Court's decision must be made to the District Court in accordance with Judge Spatt's individual rules." *See* Order dated April 9, 2003.

Contrary to Blue Water's contention, its motion is, in fact, governed by Local Rule 6.3 and it is not in compliance with either this rule or the Court's Individual Rules of Practice. In any event, even if Blue Water's motion for reconsideration was in compliance with both of these rules, the Court finds that Blue Water's affidavit and its Reply Memorandum of Law fail to raise any issue of fact or law overlooked by this Court that would alter the Court's Order. *See Maxwell v. City of New York*, 272 F.Supp.2d 285, 304 n. 1 (the Court consid-

ered a motion for reconsideration on the merits despite its untimely filing).

It is well settled that a motion for reconsideration "will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.,* 70 F.3d 255, 257 (2d Cir.1995). A motion for reconsideration should only be granted "to correct manifest errors of law or fact, hear newly discovered evidence, consider a change in the applicable law or prevent manifest injustice." *U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co., Ltd.,* 182 F.R.D. 97, 100 (S.D.N.Y.1998), *aff'd,* 241 F.3d 135 (2d Cir.2001). The difficult burden imposed on the moving party has been established "in order to dissuade repetitive arguments on issues that have already been considered fully by the Court." *Ruiz v. Comm'r of D.O.T. of City of NY,* 687 F.Supp. 888, 890 (S.D.N.Y.1988), *aff'd,* 858 F.2d 898 (2d Cir.1988).

To grant such a motion the Court must find that it overlooked " 'matters or controlling decisions' which, if considered by the Court, would have mandated a different result." *Durant v. Traditional Inv., Ltd.,* 88–9048, 1990 WL 269854, at *1 (S.D.N.Y. Apr. 25, 1990). Accordingly, a motion to reconsider should never act "as a substitute from appealing from a final judgment." *Bonnie & Co. Fashions, Inc. v. Bankers Trust Co.,* 170 F.R.D. 111, 113 (S.D.N.Y.1997).

▆ Under New York law, where an agreement contains an exculpatory provision which states in unequivocal terms that the intention of the parties is to relieve a defendant of his liability for negligence, the agreement will be enforced. *Lago v. Krollage,* 78 N.Y.2d 95, 99, 571 N.Y.S.2d 689, 692, 575 N.E.2d 107 (1991) (disclaim-

ing one's liability for his own negligence, though disfavored by New York law and closely scrutinized by courts, is generally enforced where the exculpatory agreement is stated in unequivocal terms) (citing *Gross v. Sweet,* 49 N.Y.2d 102, 424 N.Y.S.2d 365, 400 N.E.2d 306 (1979)). However, an agreement will not be enforced if it purports to exempt liability for willful or grossly negligent acts or where a special relationship exists between the parties so that an overriding public interest renders the exculpatory clause unenforceable. *Id.* Thus, "unless the intention of the parties is expressed in unmistakable language, an exculpatory clause will not be deemed to insulate a party from liability for his own negligent acts." *Gross v. Sweet,* 49 N.Y.2d at 107, 424 N.Y.S.2d 365, 400 N.E.2d 306 (citations omitted).

The agreements at issue in this case provide in pertinent part:

Licensor does not maintain insurance for the benefit of any Licensee to protect against loss or damage to Licensee's boat from fire, theft, vandalism, collision, acts of God, or other casualty, or for personal injury thereon. Licensee is required to maintain independent insurance for such purposes. Licensee expressly acknowledges that Licensor shall not be liable to Licensee or any guest, invitee, employee or lienholder for any loss, injury or damage to Licensee's boat, personal property of Licensee or any guest, invitee, employee or lienholder or personal injury thereon, irrespective of how the same is caused, unless the same results from Licensor's willful misconduct or gross negligence and in such event Licensor's liability for property damage and personal injury is expressly limited to the sum of $1,000.

License Agreement ¶ 3.

In applying the aforementioned New York state law principles, the Court held

that the above disclaimer does not unequivocally state that Blue Water is relieved of its own negligence because: (1) the disclaimer does not expressly state that Blue Water is relieved of its own negligence, *but cf. Uribe v. Merch. Bank of N.Y.*, 91 N.Y.2d 336, 338–42, 670 N.Y.S.2d 393, 693 N.E.2d 740 (1998); (2) the disclaimer does not contain the word "negligence" nor does it contain any language that conveys a similar meaning to disclaim negligence, *see Gross*, 49 N.Y.2d at 108, 424 N.Y.S.2d 365, 400 N.E.2d 306; (3) the fact that licensees who enter into these agreements with Blue Water may not be sophisticated businessmen requires that Blue Water state any disclaimer of negligence precisely and in plain language, *see Uribe*, 91 N.Y.2d at 341, 670 N.Y.S.2d 393, 693 N.E.2d 740; (4) the ambiguities contained in the provision are construed against the drafter, Blue Water, *see Uribe*, 91 N.Y.2d at 341, 670 N.Y.S.2d 393, 693 N.E.2d 740; and (5) the $1,000 limitation of liability on Blue Water's acts that constitute willful misconduct or gross negligence is unenforceable, *see Gross*, 49 N.Y.2d at 107, 424 N.Y.S.2d 365, 400 N.E.2d 306. *See* Order at 10–11.

As stated above, Blue Water brought a similar motion to dismiss in Nassau Supreme Court in the case of *Roche v. Blue Water Yacht Club*, Index No. 14462/2002 /2002 (Sup.Ct. Nassau County Feb. 26, 2003) (J. Joseph), a case arising out of the same fire and involving the same licensing agreement that is at issue here. In that case, Blue Water's motion to dismiss was granted because the court, in a thoughtful and well-written opinion, found the exculpatory provision to be enforceable. *See Roche*, Index No. 14462/2002 at 3. Although *Roche* is not binding on this Court, *see Harem–Christensen Corp. v. M.S. Frigo Harmony*, 477 F.Supp. 694, 697 (S.D.N.Y.1979) (the Court is not bound by rulings of intermediate or lower state courts on an issue on which the highest court of the state has not spoken), the Court will examine decisions of lower state courts to determine whether it is reasonable to assume that they present the current status of that state's law. *See Kuwait Airways Corp. v. Ogden Allied Aviation Services*, 726 F.Supp. 1389, 1395 n. 13 (E.D.N.Y.1989).

In granting Blue Water's motion to dismiss, Justice Joseph held that the license agreement was fully enforceable because its terms, including the exculpatory provision, "appear plain and unambiguous." *Roche v. Blue Water Yacht Club*, Index No. 14462/2002 at 3 (citing *Segale v. Nu Wave Marine, Inc.*, 244 A.D.2d 326, 663 N.Y.S.2d 872 (2d Dep't.1997)). In concluding that the terms of the license agreement disclaim Blue Water's liability for negligence, Justice Joseph found that the license terms specifically advise Roche to obtain insurance " 'to protect against loss or damage to [his] boat from fire, theft, vandalism, collision, acts of God, or other casualty, or for personal injury thereon.' Fire, such as the one that happened herein, is specifically listed in the agreement." *Roche v. Blue Water Yacht Club*, Index Number 14462/2002, at 3 (quoting the License Agreement at ¶ 3).

However, the fact that the license agreement in question requires Cantamessa and Durso to obtain insurance to protect against loss or damage to their boats from, among other things, fire and also disclaims liability "irrespective of how the same is caused," License Agreement at ¶ 3, does not demonstrate "in unequivocal terms the intention of the parties to relieve a defendant of her liability for negligence." *See Lago v. Krollage*, 78 N.Y.2d 95, 99, 571 N.Y.S.2d 689, 575 N.E.2d 107; *see also Gross*, 49 N.Y.2d at 108, 424 N.Y.S.2d 365, 400 N.E.2d 306 (although a disclaimer need not contain the word "negligence" to

be enforced, where it does not convey a similar import, it is unenforceable) (citations omitted). The instant agreement neither contains the word "negligence" nor contains language conveying a similar meaning. Rather, the "sweeping language" contained in this agreement is more akin to that found in agreements that have not been given effect. *Compare Gross*, 49 N.Y.2d at 108–09, 424 N.Y.S.2d 365, 400 N.E.2d 306 (agreements to release from "any and all responsibility or liability of any nature whatsoever for any loss of property or personal injury occurring on this trip" or to "waive claim for any loss to personal property, or for any personal injury while a member of (a) club" have not barred claims based on negligence) (citations omitted), *with Scrivener v. Sky's The Limit, Inc.*, 68 F.Supp.2d 277, 280 (S.D.N.Y.1999) (finding that an agreement clearly expressed parties' intentions to relieve the defendant from liability for its own negligent conduct by stating that "[the plaintiff expressly] releases the Released Parties from any and all liabilities . . . arising out of participation in parachuting and skydiving activities, including but not limited to, losses, claims or liabilities caused by the PASSIVE OR ACTIVE NEGLIGENCE of the released parties.") (emphasis in original), *and Uribe v. Merch. Bank of N.Y.*, 91 N.Y.2d 336, 338–42, 670 N.Y.S.2d 393, 394–97, 693 N.E.2d 740 (1998) (agreement, which provided "[r]enters expressly waive every presumption of law that loss shall have occurred through Bank's negligence," held enforceable), *and Lago*, 78 N.Y.2d at 98–101, 571 N.Y.S.2d at 691–93, 575 N.E.2d 107 (enforcing an agreement which expressly stated that the defendant was relieved from any negligence in a NASCAR race).

Furthermore, the provision in question is distinguishable from the provision in *Segale*, the case upon which *Roche* appears to be based. The provision in *Segale* ex-pressly disclaimed liability relating to fire by stating that the defendant marina was released from "*any and all liability* from [sic] loss, injury (including death), or damages to persons or property sustained while in or on the facilities of [the defendant], *including fire*, theft, vandalism, windstorm . . . etc." *See Segale*, 244 A.D.2d at 328 (emphasis added). Here, the provision advises the plaintiffs to obtain insurance but nowhere does the agreement expressly and unequivocally state that Blue Water is not liable for damage due to fire or for acts of negligence. *But cf. Futterman v. West Shore Marina, Inc.*, 286 A.D.2d 367, 729 N.Y.S.2d 180 (2d Dep't 2001) (holding that a marina contract stating "[i]t is understood and agreed by the owner that [the marina] is *not responsible or liable* for any loss through *fire* . . . and does not carry insurance to cover the same" relieved the marina of liability (emphasis added)).

For the aforementioned reasons, the Court also disagrees with the conclusions in *Amica Mut. Ins. Co., et al. v. Schwanter and Blue Water Yacht Club*, Index No. 38904/02 and *State Farm Fire & Casualty Co., et al. v. Zodiac of North Amer., Inc., et al.*, Index No. 19406/02.

Thus, the fact that other judges in coordinate positions construed Blue Water's exculpatory provision to effectively disclaim liability for its own negligence, does not constitute a controlling decision mandating this Court to now similarly hold. Blue Water fails to state a change in the controlling law nor was any controlling authority overlooked when this Court issued its Order. Accordingly, Blue Water's motion for reconsideration is **DENIED**.

## II. CONCLUSION

Based upon the foregoing, it is hereby

**ORDERED** that the plaintiff's motion for reconsideration is **DENIED.**

**SO ORDERED.**