**DUNAVANT ENTERPRISES, INC.,**
**Plaintiff-Appellant,**

v.

**STRACHAN SHIPPING COMPANY,**
**Defendant-Appellee.**

No. 83–7023.

United States Court of Appeals,
Eleventh Circuit.

April 23, 1984.

---

Michael J. Maginnis, McGlinchey, Stafford, Mintz & Cellini, New Orleans, La., Champ Lyons, Jr., Coale, Helmsing, Lyons & Sims, Mobile, Ala., for plaintiff-appellant.

W. Boyd Reeves, Donald C. Radcliff, Mobile, Ala., for defendant-appellee.

Before KRAVITCH, JOHNSON and HATCHETT, Circuit Judges.

PER CURIAM:

This lawsuit arises out of the loss sustained by Dunavant Enterprises, Inc. ("Dunavant") when a fire damaged 151 bales of cotton that it had stored in a dockside warehouse at the Port of Mobile. Dunavant sued Strachan Shipping Company ("Strachan"), the shipping agent and stevedore for the carrier that was to transport the cotton cargo. After a trial to the judge, the district court entered judgment in favor of Strachan. On appeal, the case presents three issues for our resolution: (1) whether the district court erred in determining that it did not have admiralty jurisdiction over Dunavant's claim against Strachan, (2) whether the district court's finding that Strachan was not the bailee of Dunavant's cotton was clearly erroneous, and (3) whether the district court's finding that Strachan was not negligent with respect to its handling of the cotton cargo was clearly erroneous. Because admiralty jurisdiction, if it existed at all in this case, would be based on the existence of a maritime bailment, and because we conclude that the district court's finding that no bailment existed between Dunavant and Strachan was not clearly erroneous, we affirm the district court's determination that this case does not fall within the court's admiralty jurisdiction. Additionally, we conclude that the district court's finding that Strachan was not negligent

was not clearly erroneous and thus affirm its decision on the negligence issue as well.

In 1979, Dunavant entered into a series of contracts with the China National Textiles Import & Export Corporation pursuant to which Dunavant agreed to sell approximately .one million bales of cotton to the People's Republic of China. The China Ocean Shipping Company ("China Ocean") served as the ocean carrier for Dunavant's shipments of cotton to the People's Republic. China Ocean hired Strachan to act as its shipping agent and stevedore at the various ports of loading that would be used in transferring the cargo. Strachan's duties as shipping agent included tallying and inspecting the cotton for visible damage when it arrived at the port for shipment. Its duties as stevedore involved loading the cotton onto the ocean-going vessels when it was ready for shipment. No contractual relationship existed between Dunavant and Strachan.

The cotton cargo shipped through Mobile, including the cargo involved in this litigation, was stored in a warehouse owned and operated by the Alabama State Docks Department ("State Docks"). Unlike the practice in other ports, in Mobile the State Docks does not lease its warehouses. It gives carriers, ship agents, stevedores and shippers the privilege of using its berths, warehouses and other facilities. When cargo arrives for temporary storage, State Docks unloads it, stacks it if appropriate in one of its warehouses and issues a warehouse receipt.[1] If the cargo is damaged, the State Docks recoups the cargo for the account of the cargo owner.

The State Docks has ultimate authority to determine where and how the cargo is to be stored, although it often will defer to the wishes of the ship agent to accommodate the carrier in loading the vessel.[2] State Docks maintains security in the warehouse and port area, charges the shipper for storage expenses [3] and claims a possessory lien on the cargo stored in its warehouses.

Trial testimony indicated that State Docks controlled access to the warehouse in which the cotton involved in this. case was stored. Although, at the time of the fire, the warehouse apparently contained only cargo for carriage by vessels for which Strachan was shipping agent, Strachan did not maintain control over the warehouse. In addition to the facts previously noted, Strachan could not, for example, keep out of the warehouse State Docks employees, crewmen of the ships or truck drivers delivering cargo. Moreover, Strachan had no authority as a stevedore to load Dunavant's cotton cargo aboard a ship until directed to do so by Dunavant, either directly or through its agent.

On February 2, 1980, Strachan employees who were then working in another corner of the warehouse loading cotton aboard a vessel detected and reported a fire in the northeast corner of the North B(1) warehouse.[4] Within approximately ten minutes, the combined efforts of the Mobile Fire Department and the warehouse's overhead sprinkler system brought the fire under control. State Docks employees quickly segregated the 151 bales of damaged cotton from the rest of the cotton cargo stored in the warehouse.

1. The State Docks does not issue warehouse receipts for all cargo stored in its warehouses and did not issue a receipt on the cotton that is the subject of this litigation.

2. At the time that the cotton cargo was unloaded, a Strachan representative was present to tally the number of bales unloaded and to check and note the condition of the cotton delivered. State Docks employees did accommodate Strachan's preferences as to the placement of the cargo inside the warehouse.

3. To permit shippers to accumulate their cargoes before loading on vessels, State Docks affords a period of storage time in which charges are not assessed. When the free time expires, charges are assessed against the owner of the cargo. Charges were not assessed against the cargo involved in this case.

4. The North B(1) warehouse is 1600 feet long, and the cotton that Strachan employees were loading when the fire was detected was stored in the southeast corner of the warehouse. Strachan employees did not go past the northeast corner, and no Strachan employees were in that vicinity when the fire began.

Dunavant here challenges the conclusion of the district court that it did not have admiralty jurisdiction over Dunavant's claim against Strachan. Dunavant argues that its delivery and Strachan's receipt of the cotton cargo created a pre-loading bailment, which under *Baker Oil Tools, Inc. v. Delta Steamship Lines, Inc.*, 562 F.2d 938 (5th Cir.1977), *modified*, 571 F.2d 978 (5th Cir.1978),[5] brings the case within the court's admiralty jurisdiction.

■ *Baker Oil Tools* recognized that pre-loading bailments between the shipper and common carrier fall "within the ambit of maritime law." *Id.* at 940. Similarly, a bailment to which Dunavant, the shipper, and Strachan, the agent of the vessel owner, were parties would fall within the court's admiralty jurisdiction. A pre-loading bailment under the maritime law places upon the bailee "the custodial responsibilities that devolve upon a common law bailee." *Baker Oil Tools*, 562 F.2d at 941. The common law thus defines the responsibilities of the maritime bailee, *id.*, and supplies to maritime law the elements required to find a bailment relationship. *See id.* (affirming on the basis of maritime bailment district court's decision based on common law bailment); *T.N.T. Marine Service, Inc. v. Weaver Shipyards & Dry Docks, Inc.*, 702 F.2d 585, 588 (5th Cir.), *cert. denied*, — U.S. ——, 104 S.Ct. 151, 78 L.Ed.2d 141 (1983).

■ Alabama recently adopted the common law definition of bailment. In *Farmer v. Machine Craft, Inc.*, 406 So.2d 981 (Ala.Civ.App.1981), the Court defined a bailment as

"[T]he delivery of personal property by one person to another in trust for a specific purpose, with a contract, express or implied, that the trust shall be faithfully executed, and the property returned or

duly accounted for when the special purpose is accomplished, or kept until the bailor reclaims it."

*Id.* at 982 (quoting 8 Am.Jur.2d Bailments § 2 (1980) (footnotes omitted)). A bailment requires the "change of possession, actual or constructive, and the bailee must have voluntarily assumed the custody and possession of the property for another. Change of possession necessarily requires a change of actual or constructive control over the item of property." *Id.* at 982–83 (citations omitted).

■ The district court here found that no bailment existed between Dunavant and Strachan. This factual finding must be sustained on appeal unless clearly erroneous. Fed.R.Civ.P. 52(a); *American National Bank v. F.D.I.C.*, 710 F.2d 1528, 1533 (11th Cir.1983). Thus, the trial court's factual findings "must be allowed to stand unless the reviewing court is left with the definite and firm impression that a mistake has been made." *Id.* at 1534. Far from having a firm impression that error was committed below, this Court has the definite impression that the lower court's finding on the bailment question is correct. Appellant has not directed us to evidence in the record to show that Strachan expressly or impliedly contracted with Dunavant or that it ever acquired actual or constructive control over the cotton cargo, as required for a finding that a bailment was created.

■ Concluding as we do that the district court's finding that no bailment existed in this case was not clearly erroneous, we also conclude that the district court correctly determined that it did not have admiralty jurisdiction over the claim presented against Strachan.[6]

■ Dunavant also argues that the district court's finding that Strachan was

---

**5.** The Eleventh Circuit Court of Appeals has adopted the case law of the former Fifth Circuit handed down as of September 30, 1981, as its governing body of precedent, which is binding unless and until overruled or modified by this Court en banc. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

**6.** The district court also rejected other possible bases for the exercise of admiralty jurisdiction in this case. On appeal, Dunavant challenges only the decision on the question whether admiralty jurisdiction is supported by the existence of a maritime bailment, and we address only that question.

not negligent with respect to the cotton cargo is clearly erroneous. Again, we cannot agree. In the absence of a bailment relationship, the burdens of production and persuasion on the question of negligence remain with the plaintiff. *See Stegeman v. Miami Beach Boat Slips, Inc.*, 213 F.2d 561, 564 (5th Cir.1954). Dunavant has not directed this Court to evidence in the record to show that Strachan was negligent. The origin of the fire remains unknown. No Strachan employees were in the area of the fire when it was discovered, nor did Strachan employees pass by the vicinity of the fire when they were loading cotton at the other end of the warehouse. The only evidence on this point offered by Dunavant was the testimony of a former Strachan employee who stated that on the day before the fire he, along with some State Docks employees and truck drivers, smoked cigarettes at the end of the warehouse opposite from the place where the fire occurred. It is for the trial court to determine the credibility and possible weight of this former employee's testimony, and we note that even if believed it does not prove that a person for whose actions Strachan is responsible was the cause of the fire.

The decision of the district court is AFFIRMED.