**COMMERCIAL UNION INSURANCE COMPANY as subrogee of Michael Cantamessa and The Employers' Fire Insurance Company as subrogee of Charles Durso, Plaintiffs,**

v.

**BLUE WATER YACHT CLUB ASSOCIATION, John Quattrocchi, Thomas Schwanter, and Barbara Kahn, Defendants.**

**No. 01CV8590 (ADS)(ARL).**

United States District Court, E.D. New York.

Jan. 17, 2003.

---

Nicoletti Hornig Campise & Sweeney, New York, NY (Val Wamser, of counsel), for Plaintiffs.

Speyer & Perlberg, LLP, Melville, NY (Debra Ann Urbano, of counsel), for Defendant Blue Water Yacht Club Association.

Kelly, Rode & Kelly, LLP, Mineola, NY (Thomas W. Ledwith, of counsel), for Defendant John Quattrocchi.

Mendes & Mount, LLP, New York, NY (Patrick J. Maloney, of counsel), for Defendant Thomas Schwanter.

Feldman, Rudy, Kirby & Farquharson, P.C., Westbury, NY (Doreen J. Spagnuolo, of counsel), for Defendant Barbara Kahn.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

In this case, the plaintiffs the Commercial Union Insurance Company ("Commercial") as subrogee of Michael Cantamessa ("Cantamessa") and The Employers' Fire Insurance Company ("Employers' Fire") as subrogee of Charles Durso ("Durso") allege that the defendants the Blue Water Yacht Club Association ("Blue Water"), John Quattrocchi ("Quattrocchi"), Thomas Schwanter ("Schwanter") and Barbara Kahn ("Kahn") are liable for damages to Cantamessa's and Durso's motor boats caused during a fire at the Blue Water indoor storage facility. The claims include negligence, breach of bailment and breach of contract. Presently before the Court are motions by the defendants to dismiss the complaint for lack of subject matter jurisdiction pursuant to Rule 12(h)(3) of the Federal Rules of Civil Procedure. In the alternative, Blue Water moves to dismiss the complaint for failure to state a claim upon which relief can be grant pursuant to Rule 12(b)(6).

## I. BACKGROUND

The facts are taken from the complaint unless otherwise noted. In August 2001, Cantamessa and Durso stored their motor boats at the Blue Water marina in Merrick, New York. At that time, Commercial insured Cantamessa's boat and Employers' Fire insured the boat owned by Durso's.

On August 13, 2001, a fire erupted in the indoor storage facility at the Blue Water marina. A preliminary investigation revealed that the origin of the fire was in the boats owned by Quattrocchi, Schwanter or Kahn which were each stored at the facility. The fire caused severe damage to the two boats at issue. Pursuant to the terms of their insurance policies, Commercial paid Cantamessa $24,955.02 and Employers' Fire paid Durso $8,470.03 to cover the loss of the boats.

On December 28, 2001, the plaintiffs filed the instant subrogation action against the defendants alleging that they were responsible for the fire damage to the boats owned by Cantamessa and Durso. The complaint alleges admiralty jurisdiction and sets forth claims for negligence, breach of bailment and breach of contract. The defendants now move to dismiss the action under Rule 12(h)(3) for lack of subject matter jurisdiction on the ground that there is no admiralty jurisdiction. In the alternative, Blue Water moves to dismiss the complaint against it under Rule 12(b)(6) for failure to state a claim on the ground that Blue Water's individual agreements with Cantamessa and Durso preclude liability for damages to their boats.

## II. DISCUSSION

### A. Subject Matter Jurisdiction

■ When evaluating subject matter jurisdiction, district courts may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional question. *See Robinson v. Gov't of Malaysia,* 269 F.3d 133, 141 n. 6 (2d Cir.2001); *Antares Aircraft, L.P. v. Fed. Republic of Nigeria,* 948 F.2d 90, 96 (2d Cir.1991), *vacated on other grounds,* 505 U.S. 1215, 112 S.Ct. 3020, 120 L.Ed.2d 892 (1992); *Exch. Nat'l Bank of Chicago v. Touche Ross & Co.,* 544 F.2d 1126, 1130 (2d Cir. 1976). District courts must accept as true all material factual allegations in the complaint, but will not draw inferences favorable to the party asserting jurisdiction. *Shipping Fin. Servs. Corp. v. Drakos,* 140 F.3d 129, 131 (2d Cir.1998); *Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.,* 968 F.2d 196, 198 (2d Cir.1992). Hearsay statements contained in affidavits may not be considered. *Kamen v. Am. Tel. & Tel. Co.,* 791 F.2d 1006, 1011 (2d Cir.1986).

### 1. Admiralty Jurisdiction

■ Congress has granted district courts the power to entertain "[a]ny civil case of admiralty or maritime jurisdiction." 28 U.S.C. § 1333(1). That jurisdictional power encompasses "all contracts ... which relate to the navigation, business, or commerce of the sea." *Atl. Mut. Ins.,* 968 F.2d at 199 (internal quotation marks and citations omitted). In determining whether admiralty jurisdiction exists with regard to a contract claim, a court must refer "to the nature and subject of the contract." *Omaha Indem. Co. v. Whaleneck Harbor Marina, Inc.,* 610 F.Supp. 154, 155 (E.D.N.Y.1985); *Ziegler v. Rieff,* 637 F.Supp. 675, 677 (S.D.N.Y.1986). When a contract "relates to ships in their use as ships or to commerce or transportation in navigable waters, there is admiralty juris-

diction." *Omaha Indem. Co.,* 610 F.Supp. at 155–56 (internal quotation marks and citations omitted).

■ In this case, Cantamessa and Durso stored their boats at the Blue Water marina under the terms of an agreement which required mandatory winterizing and servicing of their boats. This storage and service agreement sufficiently relates to ships in navigable waters to establish admiralty jurisdiction. *See Commercial Union Ins. Co. v. Used Boat Haven,* No. 94-0448, 1996 WL 191960, at *2 (S.D.N.Y. Apr. 22, 1996) ("It has long been held that contracts to repair and store vessels fall within the Court's admiralty jurisdiction, whether the vessels are kept on land or in the water.") (citing *Royal Ins. Co. of Am. v. Long Beach Marineland,* 1989 A.M.C. 2090 (S.D.N.Y. Apr.30, 1988); *Ziegler,* 637 F.Supp. at 677; *Omaha Indem.,* 610 F.Supp. at 156–57). Accordingly, admiralty jurisdiction with regard to the plaintiff's contract claim.

Further, because the remaining tort claims arise from the same nucleus of operative facts as the contract claim, the Court has supplemental jurisdiction over those claims. *See Commercial Union,* 1996 WL 191960, at *5 n. 2 (exercising supplemental jurisdiction over tort claims that arise from the same facts as the contract claim); *Royal Ins.,* 1989 A.M.C. at 2092 (same); *Ziegler,* 637 F.Supp. at 677 (same); *Omaha Indem.,* 610 F.Supp. at 157 (same). Blue Water's argument that *Sisson v. Ruby,* 497 U.S. 358, 110 S.Ct. 2892, 111 L.Ed.2d 292 (1990) restricts the use of supplemental jurisdiction in tort actions involving boats is without merit. *Sisson* does not address supplemental jurisdiction but rather analyzes a tort claim under admiralty jurisdiction. 497 U.S. at 359–74, 110 S.Ct. at 2892. Furthermore, Blue Water's argument that since *Sisson* federal courts have held a boat stored on

storage racks or on land is not on navigable waters and have refused to exercise supplemental jurisdiction over those related-tort claims is also incorrect. *See Commercial Union,* 1996 WL 191960, at *5 n. 2 (exercising supplemental jurisdiction—post-*Sisson*—over a negligent claim arising from fire damage to a boat stored on land). Accordingly, the Court will exercise supplemental jurisdiction over the remaining tort claims.

### B. Motion to Dismiss

In a motion to dismiss for failure to state a claim, a district court should dismiss the complaint pursuant to Rule 12(b)(6) only if it appears beyond doubt that the plaintiff can prove no set of facts in support of her claim which would entitle her to relief. *King v. Simpson,* 189 F.3d 284, 287 (2d Cir.1999). A district court must confine its consideration "to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Israel Disc. Bank of N.Y.,* 199 F.3d 99, 107 (2d Cir.1999). A district court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Koppel v. 4987 Corp.,* 167 F.3d 125, 128 (2d Cir.1999). The issue to consider is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support her claims. *See Villager Pond, Inc. v. Town of Darien,* 56 F.3d 375, 378 (2d Cir.1995). Indeed, it is not a district court's function to weigh the evidence that might be presented at trial; instead, a district court must merely determine whether the complaint itself is legally sufficient. *See id.*

### 1. The Disclaimer Agreement

In this case, Blue Water argues that its license agreements with Cantamessa and Durso disclaimed liability for its own negligence. Blue Water further argues that the complaint only alleges acts of negligence and therefore it must be dismissed with prejudice. In response, the plaintiffs contend that the license agreements fail to expressly and unequivocally disclaim liability for Blue Water's own negligence as required under New York and general maritime law.

The threshold issue that the Court must decide is what law governs this case—New York State or general maritime. Neither party briefed this issue. Blue Water simply assumes that New York law governs, while the plaintiffs for the most part assume that New York law governs but note that general maritime as a potential governing law.

■■■ The Court will apply New York law for the following reasons. First, it is undisputed that the laws of New York State and general maritime provide the only potential sources of law in this case. Also, the litigants each come from New York and the damage to the boats occurred here, and jurisdiction is based on general maritime law. Second, the New York and general maritime laws are not in conflict on the issue of the enforceability of disclaimer agreements. *See Miller v. Bombardier, Inc.,* 872 F.Supp. 114, 117 (S.D.N.Y.1995) ("[T]he first step in any case presenting a potential choice of law issue is to determine whether there is an actual conflict between the law of the jurisdictions involved."). Under general maritime and New York law, courts must give effect to a disclaimer agreement relieving a party of its own negligence when it is clear and unequivocal. *Compare Edward Leasing Corp. v. Uhlig & Assoc., Inc.,* 785 F.2d 877, 889 (11th Cir.1986) (stating that a negligent disclaimer agreement must be

clear and unequivocal to be enforced under general maritime law) *with Lago v. Krollage,* 78 N.Y.2d 95, 99, 571 N.Y.S.2d 689, 692, 575 N.E.2d 107 (N.Y.1991) (disclaiming one's liability for her own negligence, though disfavored by New York law and closely scrutinized by courts, is generally enforced where the exculpatory agreement is stated in unequivocal terms).

Third, the parties' assumption in their briefs that New York law governs constitutes implied consent to its application to the merits of this case. *See Santalucia v. Sebright Transp., Inc.,* 232 F.3d 293, 296 (2d Cir.2000) ("The parties' briefs assume that New York law controls this dispute, and such implied consent . . . is sufficient to establish choice of law.") (internal quotation marks and citations omitted). For these reasons, the Court will apply New York law.

■ When there is no contravening public policy, an exculpatory provision in a contract, disclaiming one of the party's liability for its own negligence, though disfavored by New York law and closely scrutinized by courts, is generally enforced. *Lago,* 78 N.Y.2d at 99, 571 N.Y.S.2d at 693, 575 N.E.2d 107 (citing *Gross v. Sweet,* 49 N.Y.2d 102, 424 N.Y.S.2d 365, 400 N.E.2d 306 (N.Y.1979)). Where the exculpatory agreement states in unequivocal terms the intention of the parties to relieve a defendant of her liability for negligence, the agreement will be enforced. *Id.* However, the agreement will not be enforced where it purports to exempt liability for willful or grossly negligent acts or where a special relationship exists between the parties so that an overriding public interest renders the exculpatory clause unenforceable. *Id.*

The agreements at issue in this case provide in pertinent part:

Licensee expressly acknowledges that Licensor shall not be liable to Licensee or any guest, invitee, employee or lienholder for any loss, injury or damage to Licensee's boat, personal property of Licensee or any guest, invitee, employee or lienholder or personal injury thereon, irrespective of how the same is caused, unless the same results from Licensor's willful misconduct or gross negligence and in such event Licensor's liability for property damage and personal injury is expressly limited to the sum of $1,000.

License Agreement ¶ 3.

■ The Court finds that the above disclaimer does not state unequivocally that Blue Water is relieved of its own negligence. First, the disclaimer does not expressly state that Blue Water is relieved of its own negligence. *But cf. Scrivener v. Sky's The Limit, Inc.,* 68 F.Supp.2d 277, 280 (S.D.N.Y.1999) (finding agreement clearly expressed parties' intentions to relieve the defendant from liability for its own negligent conduct—"[the plaintiff expressly] releases the Released Parties from any and all liabilities . . . arising out of participation in parachuting and skydiving activities, including but not limited to, losses, claims or liabilities caused by the **PASSIVE OR ACTIVE NEGLIGENCE** of the released parties.") (emphasis in original); *Uribe v. Merch. Bank of N.Y.,* 91 N.Y.2d 336, 338–42, 670 N.Y.S.2d 393, 394–97, 693 N.E.2d 740 (1998) (agreement, which provided "[r]enters expressly waive every presumption of law that loss shall have occurred through Bank's negligence", held enforceable); *Lago,* 78 N.Y.2d at 98–101, 571 N.Y.S.2d at 691–93, 575 N.E.2d 107 (enforcing agreement disclaiming the defendants' liability in a NASCAR race, which expressly stated that the defendant was relieved from any negligence).

Second, although a disclaimer need not contain the word "negligence" to be enforced, where, as here, it does not convey a similar import, it is unenforceable. *See*

*Gross,* 49 N.Y.2d at 108, 424 N.Y.S.2d at 368, 400 N.E.2d 306 (citations omitted). The instant agreement contains no language that conveys a similar meaning to disclaim negligence without using that word, such as that Blue Water is not responsible for damages caused by its own fault or when it fails to use reasonable care. It simply states that Blue Water is not liable for damages to the boats "irrespective of how the same is caused" and then goes on the limit Blue Water's liability to $1,000 for willful misconduct or gross negligence. In order for Blue Water to effectively disclaim liability for its own negligence, it should have directly said so or used similar language that imports a disclaimer for its own negligence.

Third, the licensees who enter into these agreements with Blue Water may not be sophisticated businessmen. *Uribe,* 91 N.Y.2d at 341, 693 N.E.2d at 396 (noting that the intentions of the parties is determined by the level of sophistication and acumen of the particular parties). The licensees are individuals who wish to winterize and store their boats at the marina. As such, Blue Water must state precisely and in plain language any disclaimer on its exposure to negligence claims.

Because ambiguities must be construed against the drafter of the disclaimer agreement, the Court is unable to enforce the instant disclaimer. *See Uribe,* 91 N.Y.2d at 341, 670 N.Y.S.2d at 396, 693 N.E.2d 740 (stating that ambiguities are construed against the drafter). Blue Water's failure to state plainly and precisely that its limit of liability extends to its own negligence renders the purported disclaimer unenforceable with regard to the claims in this case. Accordingly, the Court will not enforce the purported disclaimer.

█ Finally, the $1,000 limitation of liability on Blue Water's acts that constitute willful misconduct or gross negligent is unenforceable. *See Gross,* 49 N.Y.2d at 107, 424 N.Y.S.2d at 368, 400 N.E.2d 306 (stating that agreements which purport to limit liability for willful or gross misconduct are unenforceable).

### III. CONCLUSION

Based upon the foregoing, it is hereby

**ORDERED,** that the motions by the defendants to dismiss the complaint for lack of subject matter jurisdiction are **DENIED;** and it is further

**ORDERED,** that the motion by the defendant Blue Water to dismiss the complaint for failure to state a claim upon within relief can be granted is **DENIED.**

**SO ORDERED.**