[No. 58487-1-I. Division One. May 21, 2007.]

MARKEL AMERICAN INSURANCE COMPANY, *Appellant*, v. DAGMAR'S MARINA, LLC, *Respondent*.

470

*Chris P. Reilly* (of *Nicoll Black Misenti & Feig*), for appellant.

*M.A. Michelle Buhler* (of *Danielson Harrigan Lehy & Tollefson*), for respondent.

¶1 COLEMAN, J. — The principal issue in this case is whether a limitation of liability provision in a lease agreement clearly and unequivocally disclaims a marina's liability for damage caused by its own negligence. The second issue is whether the marina provided storage services to the boat owner, thus giving rise to an implied warranty of workmanlike performance. We reverse and remand because the lease's limitation of liability provision does not clearly and unequivocally disclaim the marina's liability for damage caused by its own negligence. We agree with the trial court that the marina did not provide storage services giving rise to an implied warranty of workmanlike performance.

## FACTS

¶2 In August 1999, Harrison Jones, on behalf of Prosail Northwest, LLC, entered into a lease agreement with Dagmar's Marina, LLC, for the monthly lease of a berth for

Prosail's vessel, *Running with Scissors*. This appeal centers on section 5 of the lease, which is a limitation of liability provision. It states:

> "5. Limitations of Marina's Liability. [(1)] Boat Owner acknowledges that he has inspected the berthing space leased herein and satisfied himself that the berthing space is adequate for safe mooring of his vessel. [(2)] **This contract is not a bailment of the boat Owner's boat but a lease of berthing space.** [(3)] It is mutually agreed that the Marina does not accept Owner's boat for storage and shall not be liable or responsible in any manner for its safekeeping and condition of its tackle, apparel, fixtures, equipment, and/or furnishings. [(4)] The Owner agrees to relieve Marina, its personnel and equipment of all responsibility for damages that may occur while they are handling the Owner's boat upon his request, with the exception of damages resulting from operator error or equipment failure. [(5)] **The Owner also acknowledges the special hazards of keeping a wooden boat out of the water for a prolonged period of time.** [(6)] **Furthermore, the Boat Owner acknowledges the damage that can occur with a core-filled boat.** [(7)] It is further agreed that the Marina will not be liable or responsible for any personal injuries suffered by the Owner or his agents or invitees arising from any cause upon the boat, Marina premise or premises adjacent thereto. [(8)] Owner agrees to keep the premises adjacent to the berth neat, clean, orderly and free as possible from all inflammatory substances. [(9)] Owner agrees to indemnify and hold the Marina harmless from any theft or other property loss, damage or personal injury (including death) resulting from the acts or omissions of Owner, his agents, invitees, or employees."

Br. of Appellant at 2 (sentences numbered for clarity) (quoting Ex. A). The meaning of the provision's third sentence is disputed by the parties.

¶3 The vessel was placed in a berth at the marina in September 1999 and remained there during all times relevant to this appeal. On October 31, 2003, the vessel was blown to the ground in a windstorm and its hull was damaged. Markel American Insurance Company, the hull insurer for Prosail, filed a complaint against the marina,

alleging two causes of action under general maritime law: negligence and breach of implied warranty of workmanlike performance. Markel alleged that the marina was negligent in configuring the "blocking system" (materials used to support and brace the vessel).

¶4 The trial court granted the marina's motion for summary judgment. The court also filed a minute order which read, in relevant part:

> The court finds that the lease is the controlling document and paragraph five of the lease expressly disclaims liability for storage. Any cause of action for negligence requires a duty and all such duties are disclaimed. This is a space lease; and no other services are provided.

Markel appeals the trial court's order granting summary judgment in favor of the marina.

## ANALYSIS

¶5 The first issue is whether the limitation of liability provision in the lease relieves the marina of liability due to its own negligence. The parties agree that this case is governed by federal maritime law. They also agree that under Ninth Circuit maritime law, exculpatory clauses are enforceable even if they absolve a party of all liability for negligence.

> Other circuits may adhere [to the rule voiding such clauses], but the Ninth Circuit has weighed the policy considerations and concluded that, except in towing contracts, *exculpatory clauses are enforceable even when they completely absolve parties from liability for negligence.*

*Royal Ins. Co. of Am. v. Sw. Marine*, 194 F.3d 1009, 1014 (9th Cir. 1999) (emphasis added) (citations omitted). The Eighth Circuit, which adopted the Ninth Circuit's approach to exculpatory clauses, has held that an exculpatory clause in a "Boat Space Rental Agreement" absolves a marina from liability for its own negligence "as long as the parties' intent to do so is clear and the clause is not the result of overreaching . . . ." *Sander v. Alexander Richardson Invs.*,

334 F.3d 712, 719 (8th Cir. 2003). The intent to exculpate a party from its own negligence must "'be clearly and unequivocally expressed.'" *Sander*, 334 F.3d at 715 (quoting *Randall v. Chevron U.S.A., Inc.*, 13 F.3d 888, 905, *modified on other grounds on denial of reh'g*, 22 F.3d 568 (5th Cir. 1994)). Words in a maritime contract normally should be given their plain meaning. *See, e.g., La. Land & Exploration Co. v. Offshore Tugs, Inc.*, 23 F.3d 967, 969 (5th Cir. 1994). Exculpatory clauses[1] are construed against the drafter if more than one construction of a term is reasonable. *United States v. Seckinger*, 397 U.S. 203, 216, 90 S. Ct. 880, 25 L. Ed. 2d 224 (1970).

¶6  In a claim for negligence, a party must prove (1) the existence of a duty owed to the complaining party, (2) a breach of that duty, (3) a resulting injury, and (4) that the claimed breach was the proximate cause of the injury. *Hansen v. Friend*, 118 Wn.2d 476, 485, 824 P.2d 483 (1992). Whether a duty exists is a question of law. *Patrick v. Sferra*, 70 Wn. App. 676, 683, 855 P.2d 320 (1993). An entity providing docking or moorage services has a duty to maintain its docking space and moorage equipment in a safe condition. *Smith v. Burnett*, 173 U.S. 430, 433, 19 S. Ct. 442, 43 L. Ed. 756 (1899); *Schwerman Trucking Co. v. Gartland S.S. Co.*, 496 F.2d 466, 477 (7th Cir. 1974); *Berwind-White Coal Mining Co. v. City of New York*, 135 F.2d 443, 445 (2d Cir. 1943). As explained above, a party may disclaim this duty through a clearly and unequivocally expressed exculpatory clause.

¶7  The marina's limitation of liability provision does not clearly and unequivocally exculpate it from its own negligence. In deciding this issue, we first compare this case to cases from other jurisdictions analyzing the scope of exculpatory clauses in contracts for berthing space. In *Commercial Union Insurance Co. v. Blue Water Yacht Club Ass'n*, 239 F. Supp. 2d 316 (E.D.N.Y. 2003), the court examined the following exculpatory clause:

---

[1] In this opinion, "limitation of liability provision" and "exculpatory clause" are used interchangeably.

"Licensee [boat owner] expressly acknowledges that Licensor [marina] shall not be liable to Licensee or any guest, invitee, employee or lienholder for any loss, injury or damage to Licensee's boat, personal property of Licensee or any guest, invitee, employee or lienholder or personal injury thereon, irrespective of how the same is caused, unless the same results from Licensor's willful misconduct or gross negligence."

*Blue Water*, 239 F. Supp. 2d at 321.[2] The court held that the clause did not "state unequivocally that [the marina] is relieved of its own negligence." *Blue Water*, 239 F. Supp. 2d at 321. The factors that were important to the court's holding were that: (1) the clause did not expressly state that the marina was relieved of its own negligence; (2) the clause did not contain language that conveyed a similar meaning to disclaim negligence, without actually using the word "negligence"; and (3) the marina's customers may not be sophisticated business people. Other maritime cases have found exculpatory clauses insufficient to exculpate an entity from liability for its own negligence. *See Randall*, 13 F.3d at 904 (clause provided " 'Owner hereby agrees to . . . indemnify and hold harmless Chevron against all claims for . . . damages, whether to person or property, and howsoever arising in any way directly or indirectly connected with the possession, navigation, management, and operation of the vessel' "); *Doubleday v. Corinthian Yacht Club*, 1979 Am. Mar. Cases [A.M.C.] 2578, 2580 (D. Md. 1973) (clause provided " 'The Club shall not be held responsible for any loss or damage to the property of any member' ").

¶8 Here, the limitation of liability provision does not expressly state that the marina is relieved of its own negligence and it does not contain language that conveys a similar meaning. In addition, the provision is less clear than the exculpatory clause found deficient in *Blue Water*.

---

[2] While the court applied New York law, it stated, "Under general maritime and New York law, courts must give effect to a disclaimer agreement relieving a party of its own negligence when it is *clear and unequivocal*." *Blue Water*, 239 F. Supp. 2d at 320 (emphasis added).

*Compare* Br. of Appellant at 2 (" 'Marina . . . shall not be liable or responsible in any manner for [the vessel's] safekeeping' " (quoting Ex. A)) *with Blue Water*, 239 F. Supp. 2d at 321 (" '[Marina] shall not be liable . . . for any . . . damage to Licensee's boat . . . irrespective of how the same is caused . . . .' "). As will be discussed below, it is the use of the term "safekeeping" that makes the scope of the provision unclear.

¶9 In *Sander*, the court held that an exculpatory clause did disclaim a yacht club's liability for fire damage to a vessel caused by its own negligence. That clause provided:

"INSURANCE: TENANT AGREES that he will keep the boat fully insured with complete marine insurance, including hull [property] coverage and indemnity and/or liability insurance.

THE LANDLORD DOES NOT CARRY INSURANCE covering the property of the TENANT. THE LANDLORD WILL NOT BE RESPONSIBLE for any injuries or property damage resulting, caused by or growing out of the use of the dock or harbor facilities; that the TENANT RELEASES AND DISCHARGES THE LANDLORD from any and all liability for loss, injury (including death), or damages to person or property sustained while in or on the facilities of LANDLORD, including fire, theft, vandalism, wind storm, high or low waters, hail, rain, ice, collision or accident, or any other Act of God, whether said boat is being parked or hauled by an Agent of LANDLORD or not."

*Sander*, 334 F.3d at 714 (alteration in original). The court held that the clause disclaimed the yacht club's liability for its own negligence, even though the clause did not use the term "negligence." The court explained that the clause "clearly shifted the risk of loss to the boat owners by requiring the boat owners to fully insure their boats, including hull coverage" and that "[t]he term 'any and all' used in the exculpatory clause is all-encompassing and leaves little doubt as to the liability from which the boat owners released the Yacht Club." *Sander*, 334 F.3d at 716. Here, the limitation of liability provision does not include an insurance disclaimer. And instead of using clear language such as " 'any and all liability for . . . damages to . . .

property sustained while in or on the facilities,' " it provides that the marina " 'shall not be liable . . . in any manner for [the vessel's] safekeeping.' " *Sander*, 334 F.3d at 714; Br. of Appellant at 2 (quoting Ex. A). Additionally, the limitation of liability provision's third sentence is not in bold or underlined. In *Sander*, portions of the sentences disclaiming liability for the yacht club's own negligence and warnings about the club's lack of insurance were in all capital letters.

¶10 The plain language of the limitation of liability provision does not clearly and unequivocally state that the marina is relieved of liability for its own negligence. The provision merely states that the marina " 'shall not be liable or responsible in any manner for [the vessel's] safekeeping . . . .' " Br. of Appellant at 2 (quoting Ex. A). Markel cites to a dictionary that defines "safekeeping" as "the act of keeping safe or the state of being kept safe; protection; care; custody." RANDOM HOUSE WEBSTER'S UNABRIDGED DICTIONARY 1690 (2d ed. 2001). The marina cites to a dictionary that defines "safe" as "1. free from damage, danger, or injury; secure. 2. having escaped danger or injury; unharmed. 3. (a) giving protection; (b) involving no risk; (c) trustworthy." WEBSTER'S NEW TWENTIETH CENTURY DICTIONARY 1595 (2d ed. 1983).

¶11 Markel argues that keeping a boat safe is a task normally undertaken by a custodian or a security service and cites to a maritime case that refers to a custodian as responsible for the " 'safekeeping' " of a vessel. *Certain Underwriters at Lloyds v. Kenco Marine Terminal, Inc.*, 81 F.3d 871, 873 (9th Cir. 1996) (quoting *Donald D. Forsht Assocs., Inc. v. Transamerica ICS, Inc.*, 821 F.2d 1556, 1561 (11th Cir. 1987)). From this, Markel argues that "safekeeping" implies protecting property from outside forces. Markel also cites to a nonmaritime Nebraska Supreme Court decision that distinguished between safekeeping and a party's own negligence. *See Beck v. Ideal Super Mkts. of Neb., Inc.*, 181 Neb. 381, 383-84, 148 N.W.2d 839 (1967) ("There is no question but that the plaintiff was an invitee. The defendant had a legal duty to exercise ordinary care to keep the

premises reasonably safe for the use of the invitee. The defendant, however, is not an insurer of the safe keeping of invitees. The liability of the defendant is for its own negligence.").

¶12 These authorities do not establish for certain the meaning of the term "safekeeping" in this context, but they do demonstrate that the marina's use of the term does not make for a clear and unequivocal disclaimer of liability for its own negligence. "Safekeeping" is not a term of art. It could mean the marina disclaims liability for any and all damage to the vessel, even if caused by the marina's own negligence. Alternatively, it could merely mean that the marina is not liable for damage caused by outside forces such as thieves and foul weather, but is still liable for its own negligence. And exculpatory clauses are construed against the drafter if more than one construction of a term is reasonable.

¶13 Markel's narrow interpretation of the limitation of liability provision is supported by the fact that the marina demonstrated elsewhere in the provision that it knew how to limit liability for damage caused by its own negligence and the negligence of others in certain contexts. For example, the clause's fourth sentence provides:

> "The Owner agrees to relieve the Marina, its personnel and equipment of all responsibility for damages that may occur while they are handling the Owner's boat upon his request, with the exception of damages resulting from operator error or equipment failure."

Br. of Appellant at 2 (quoting Ex. A). Here, the marina clearly disclaims liability for damage caused by its own negligence while handling vessels, with exceptions made for operator error and equipment failure. The marina most clearly demonstrates its ability to disclaim liability in sentence seven:

> "It is further agreed that the Marina will not be liable or responsible for any personal injuries suffered by the Owner or his agents or invitees arising from any cause upon the boat, Marina premise or premises adjacent thereto."

Br. of Appellant at 2 (quoting Ex. A). In this sentence, the marina disclaims all liability for personal injury suffered by the owner, its agents, or invitees while on the vessel, the marina, or its adjacent premises. Finally, the clause's ninth sentence states:

> "Owner agrees to indemnify and hold the Marina harmless from any theft or other property loss, damage or personal injury (including death) resulting from the acts or omissions of Owner, his agents, invitees, or employees."

Br. of Appellant at 2 (quoting Ex. A). Here, the marina clearly disclaims liability for damage caused by the negligent acts of others. These provisions demonstrate that the marina could have clearly disclaimed liability for its own negligence had it wished to do so. Additionally, the terms "property damage" and "property loss" are used in the fourth and ninth sentences of the provision, showing that the marina also knew how to use these terms to limit its liability. When in the shadow of such clear terminology the drafter of an agreement employs different terms instead of parallel terminology, the presumption has to be that the change in usage was purposeful and reflects different and not parallel meaning. *See Robin v. Sun Oil Co.*, 548 F.2d 554, 558 (5th Cir. 1977) (noting that the maritime attorneys who drafted the contract knew the difference between key terms and also knew how to use other words if they wanted to do so).

¶14 The marina contends that *Blue Water* is contrary to the Ninth Circuit decision in *Hall-Scott Motor Car Co. v. Universal Ins. Co.*, 122 F.2d 531 (9th Cir. 1941) because the *Hall-Scott* court enforced an exculpatory clause similar to the one found deficient in *Blue Water*. The marina also argues that under *Hall-Scott*, its limitation of liability provision is sufficient to exculpate it from liability for its own negligence. We disagree. The *Hall-Scott* court decided only that, under maritime law, a clause that exculpates an entity from liability for its own negligence is enforceable. Here, the *scope* of the exculpatory clause is at issue—not its enforceability. Additionally, the exculpatory clause enforced

in *Hall-Scott* was clearer than the one at issue in this case. The clause in *Hall-Scott* provided: " 'It is understood further Hall Scott will not be held responsible for any damage to [the yacht] or for anything taken from same while the engine installation is being made.' " *Hall-Scott*, 122 F.2d at 533. Here, the marina did not use the term "any damage" but chose instead the more ambiguous term "safekeeping." Using the term "safekeeping" does not make the limitation of liability provision a clear and unequivocal disclaimer of the marina's liability for its own negligence, particularly when read in light of the clause in its entirety.

¶15 The marina further argues that it is not liable for damage to the vessel because the lease expressly states, "This contract is not a bailment . . . ." Markel's claim, however, is based on the marina's own negligence and not on a bailment relationship. In the absence of a bailment relationship, one can still maintain a negligence cause of action for property damage. *See, e.g., Dunavant Enters., Inc. v. Strachan Shipping Co.*, 730 F.2d 665, 669 (11th Cir. 1984) ("In the absence of a bailment relationship, the burdens of production and persuasion on the question of negligence remain with the plaintiff.").

¶16 The marina argues that the owner bore the risk of damage to the vessel because it had 24-hour access to the vessel, obtained hull insurance, and paid $187 per month for the berthing space. These factors, however, do not assist in determining whether the lease contains a clear and unequivocal disclaimer of the marina's liability for its own negligence. Additionally, the marina has not provided any analysis or facts supporting its argument that the amount paid per month was low enough to clearly shift all risk of damage to the owner of the vessel.

¶17 The marina argues that the limitation of liability provision's third sentence is a disclaimer of a duty, not a disclaimer of responsibility for negligence. It further argues that these two types of disclaimers should be viewed differently, but it cites no authority and gives no rationale for this position. Passing treatment of an issue or lack of

reasoned argument is insufficient to merit judicial consideration. *Palmer v. Jensen*, 81 Wn. App. 148, 153, 913 P.2d 413 (1996). Even assuming that maritime law recognizes disclaimers of duty as different from disclaimers of liability for negligence, a disclaimer of duty should at least be express. *See, e.g., Quesoro USA, Inc. v. Lykes Bros. S.S. Co.*, 1995 U.S. Dist. LEXIS 7468, at *3-4 (S.D.N.Y. 1995) (upholding clause in a bill of lading that "expressly disclaims any duty to deliver the shipment in time for a particular market"). The lease in this case does not expressly disclaim the marina's duty to keep the vessel safe from its own faulty equipment.

¶18 Finally, the marina contends that even under Markel's interpretation of the lease agreement, the marina had no duty to protect the vessel from damage caused by wind. Markel, however, argues that the inadequate blocking materials and configuration of the blocking system caused the vessel's damage. Whether the marina was negligent in blocking the vessel and, if so, whether the vessel would have withstood the windstorm with better blocking are questions of fact.

¶19 Markel next argues that the trial court erred in dismissing its implied warranty of workmanlike performance claim because the marina provided a service—blocking—and breached its implied warranty because the blocking system was defective. We disagree because the marina did not contract to perform storage services for the vessel owners and, thus, no implied warranty of workmanlike performance arose.

¶20 In deciding this issue, *U.S. Fire Insurance Co. v. S/S Jebel Ali*, 872 F. Supp. 1283, 1287 (S.D.N.Y. 1995) is helpful. There, a carrier (UASC) asserted an implied warranty claim against a stevedore (Universal) for the loss of a shipment of wine. The wine was ruined after being subjected to extreme temperatures while in Universal's possession. UASC argued that Universal breached its implied warranty of workmanlike service. Universal, however, successfully argued that the implied warranty cannot be di-

vorced from a specific contractual obligation and that it had not promised "to perform the specific service of maintaining and monitoring the temperature of the container in question." *U.S. Fire Ins.*, 872 F. Supp. at 1286. The court held that "[s]ince Universal was not obligated to perform [the temperature monitoring] service, it was, a fortiori, not required to perform the service in a workmanlike manner." *U.S. Fire Ins.*, 872 F. Supp. at 1286. Here, the marina did not contract to perform any services other than moving the vessel at the owner's request and that service was not being performed at the time the vessel was damaged. In fact, the marina expressly stated that it did not "accept Owner's boat for storage." There was no warranty of workmanlike performance here because the marina did not contract to perform storage services.[3] Additionally, implied warranties are narrowly construed in maritime law and may not even be available in property damage cases. *See, e.g.*, *Phillips Petroleum Co. v. Stokes Oil Co.*, 863 F.2d 1250, 1255 (6th Cir. 1988) ("Marine has not provided, nor have we found, any convincing authority for extending the warranty to indemnification for property damage.").

¶21 Reversed and remanded for further proceedings consistent with this opinion.

ELLINGTON and DWYER, JJ., concur.

---

[3] This does not mean that the marina disclaimed liability for its own negligence. It merely means that it did not contract to perform storage services and was not required to perform them, though it did voluntarily provide the blocking materials for the vessel to rest on.