OPINION OF THE COURT
Mary M. Farley, J.
In this CPLR article 78 proceeding, petitioners Frederick Biggs and Patricia Biggs (Biggs) challenge the determination of respondent Zoning Board of Appeals of the Town of Pierrepont, New York (ZBA) dated and filed October 15, 2015 (determination). Duane Curtis and Helen Curtis (Curtis) are named respondents, as property owners.
The facts of this proceeding are undisputed and easily stated. The Board of the Town of Pierrepont duly adopted zoning regulations which all parties agree apply to the instant dispute. Biggs and Curtis are adjacent landowners in the town, with Biggs having resided on property located at 206 County Route 29 since 1997, and Curtis having acquired property located at 161 County Route 29 (the Curtis property) in 2006. Helen Curtis transferred her interest in the Curtis property to corespondent Duane Curtis on or about August 25, 2015. Both properties are in a rural residential (R-R) district, as defined under the regulations.
At all times pertinent herein, logs were transported onto the Curtis property from other locations, processed into firewood by use of a mechanical wood processor, and then trucked off-site for sale. Likewise, topsoil was trucked onto the Curtis property from remote locations, screened by machine, and then trucked off-site for sale. Biggs filed a zoning complaint on August 6, 2015 regarding these activities, and on August 13, 2015, Town Deputy Code Enforcement Officer Clay Streit denied the complaint, concluding, “I do not see any code violations.” Biggs timely appealed Streit’s decision to ZBA, which held a public meeting on October 15, 2015.
ZBA unanimously found “there were two commercial activities being conducted by Duane Curtis at 161 County Route 29; *696 topsoil screening and firewood processing.” (Determination at 1.) It concluded the Curtis “ ‘firewood processing’ and its related activities would be classified as ‘Forestry’ under the [regulations], which is a permitted use in a [R-R district].” (Id.) It further determined “ ‘topsoil screening’ and its related activities would be classified as ‘Commercial Excavation’ under the [regulations], which is a conditional use in a [R-R district].” (Id.) Curtis acknowledges the topsoil screening requires a site plan review under the regulations and discontinued this activity pending such review. Biggs timely filed the instant special proceeding, asserting the ZBA determinations were “irrational, unreasonable, arbitrary and capricious, contrary to law, and/or not supported by substantial evidence.” (Petition ¶¶ 61, 75.)
The court addresses ZBA’s determination classifying the “firewood processing” activity as “Forestry” under the regulations, and thus a permitted use in an R-R district. Petitioners assert the activity does not come within the definition of “Forestry,” but rather is a “Natural Resource Based Industry” not permitted in a R-R district. The court agrees.
Article III of the regulations divides property within the town into five types of zoning districts, and lists both “permitted uses” and “conditional uses” within each type. The regulations specify that “[a] proposed [land] use is allowed in [a] district only if it is expressly listed. If it is not listed, it is prohibited in that district.” (Town of Pierrepont Zoning Regulations, art III, § 11 [A].) The regulations define the purpose of an R-R district as follows: “To provide for a high quality rural residential environment in suitable areas of the Town. This district is intended to be composed mainly of single-family houses of conventional construction or appearance and for supporting public or semi-public uses.” (Town of Pierrepont Zoning Regulations, art III, § 11 [D] [2] [a].) Article VIII (“Definitions”) of the regulations defines “Forestry” as follows: “The commercial operation of timber tracks, tree farms, forest nurseries, including the gathering and/or harvesting of forest products. Sawmilling activities are considered to be a natural resource based industry, and is not included within the definition of forestry.”
Petitioners assert the firewood processing activity at issue is not “Forestry,” but instead comes within the plain meaning of a “Natural Resource Based Industry.” Article VIII of the regulations defines “Natural Resource Based Industry” as follows: “Manufacturing and industrial activities which depend upon *697 the use of natural resources of the County as raw materials. Sawmills and forest product industries shall be considered natural resource based industry for the purposes of these regulations.” Notably, “sawmills” and “forest product industries” are not defined in the regulations. “Natural Resource Based Industry” is permitted only within open countryside (O-C) and agricultural residential (A-R) districts, but as a conditional use only. (Town of Pierrepont Zoning Regulations, art III, § 11 [D] [3] [c]; [4] [c]).
ZBA concluded that the Curtis activity described here as “firewood processing” fell within this definition of “Forestry,” and was therefore a permitted use, rather than a “Natural Resource Based Industry.” In this regard, the determination states: “The [ZBA] determined, . . . by a unanimous role-call vote . . . that ‘firewood processing’ and its related activities would be classified as ‘Forestry’ under the Town’s zoning regulations, which is a permitted use in a Rural-Residential zoning district.”
As a general matter, “a zoning board’s interpretation of a zoning law is afforded great deference and will only be disturbed ‘if it is irrational or unreasonable.’ ” (Matter of Meier v Village of Champlain Zoning Bd. of Appeals, 129 AD3d 1364, 1365 [3d Dept 2015].) “Although courts will ordinarily defer to a zoning board’s interpretation of a local ordinance, when ‘the issue presented is one of pure legal interpretation of the underlying zoning law or ordinance, deference is not required.’ ” (Matter of Winterton Props., LLC v Town of Mamakating Zoning Bd. of Appeals, 132 AD3d 1141, 1142 [3d Dept 2015] [citations omitted]; accord Matter of Subdivisions, Inc. v Town of Sullivan, 92 AD3d 1184, 1185 [3d Dept 2012] [no deference to board of zoning appeals where issue is pure legal interpretation], lv denied 19 NY3d 811 [2012].)
In construing the regulation provisions, two rules of construction apply. First, a zoning ordinance must be read as a whole. “A statute such as a zoning ordinance must be ‘construed as a whole, reading all of its parts together,’ all of which should be harmonized to ascertain legislative intent, and it should be given its plain meaning, avoiding a construction that renders superfluous any language in the ordinance.” (Matter of Saratoga County Economic Opportunity Council, Inc. v Village of Ballston Spa Zoning Bd. of Appeals, 112 AD3d 1035, 1037 [3d Dept 2013] [citations omitted].) “It is well settled that a zoning ordinance must be interpreted to give effect to all of its provi *698 sions, and an interpretation that nullifies any provision of [a zoning] ordinance is irrational and unreasonable.” (Matter of McLiesh v Town of Western, 68 AD3d 1675, 1676-1677 [4th Dept 2009] [citations omitted].) “A statute or legislative act is to be construed as a whole, and all parts of an act are to be read and construed together to determine the legislative intent.” (McKinney’s Cons Laws of NY, Book 1, Statutes §§ 97, 98 [a] [cited in McLiesh].)
The second rule of construction is that the expression of one thing implies the exclusion of another. Thus, in Morales v County of Nassau (94 NY2d 218 [1999]), the Court of Appeals held that the failure to include “domestic violence” within the numerous exemptions specified in CPLR article 16 meant that the omitted item was meant to be excluded. “Relying on the standard canon of construction of expressio unius est exclusio alterius, we can infer that the expression of [specific] exemptions in the statute indicates an exclusion of others.” (94 NY2d at 224.) “[W]here a law expressly describes a particular act, thing or person to which it shall apply, an irrefutable inference must be drawn that what is omitted or not included was intended to be omitted or excluded.” (McKinney’s Cons Laws of NY, Book 1, Statutes § 240 [cited in Uribe v Merchants Bank of N.Y., 91 NY2d 336, 340 (1998)].) “Where ... [a] statute describes the particular situations to which it is to apply 'an irrefutable inference must be drawn that what is omitted or not included was intended to be omitted or excluded.’ ” (Eaton v New York City Conciliation & Appeals Bd., 56 NY2d 340, 345 [1982] [citations omitted] [cited in Matter of Memorial Hosp. v Axelrod, 118 AD2d 938, 939 (3d Dept 1986), affd 68 NY2d 958 (1986)]; see also Matter of Caspian Realty, Inc. v Zoning Bd. of Appeals of Town of Greenburgh, 68 AD3d 62, 71 [2d Dept 2009] [applying rule to interpretation of Town Law concerning zoning variances].)
The rule that the entirety of the regulations must be read together to avoid a construction rendering any language superfluous applies with particular force to the definitions of “Forestry” and “Natural Resource Based Industry.” The definition of “Natural Resource Based Industry” expressly references “the use of natural resources of the County as raw material.” (Town of Pierrepont Zoning Regulations, art VIII [emphasis added].) The phrase “of the County” is rendered superfluous and meaningless if all commercial activity involving forest products as raw materials comes within its ambit. As applied *699 to forest products, the only difference between “Forestry” and “Natural Resource Based Industry” is the source of the natural resources used as raw materials. “Forestry” depends on the natural resources of the subject property. A “Natural Resource Based Industry” depends upon natural resources imported from outside the subject property — that is, natural resources “of the County as raw material.”
The second rule of construction — the expression of one thing implies the exclusion of another — further supports this result. In this regard, the definition of “Forestry” enumerates the following: “commercial operation of timber tracks, tree farms, forest nurseries, including the gathering and/or harvesting of forest products.” All of these describe taking of timber and forest products from the subject parcel. In context, the phrases “timber tracks,” “tree farms,” “forest nurseries” and “gathering and/or harvesting of forest products” only make sense if the activities described are on the parcel being zoned. A rational zoning ordinance would not permit “commercial operation” of “tree farms” located somewhere other than on the parcel the use of which is at issue. Here, the rule that “an irrefutable inference must be drawn that what is omitted . . . was intended to be omitted” leads inexorably to the conclusion that the activity at issue here — production of firewood by use of a mechanical wood processor from logs which were transported onto the Curtis property from other locations — was intended to be and was excluded from the definition of “Forestry.”
In distinguishing and separately defining “Forestry” and “Natural Resource Based Industry” in this fashion, the regulations make clear that the scope and duration of “Forestry” is inherently limited by the finite forest resources available on a particular property. Once all of the resource at issue — here the timber, trees and forest products on the subject property — has been exhausted, the use will end of its own accord. Conversely, “Natural Resource Based Industry,” specifying as it does “the use of natural resources of the County as raw material,” is not so limited and can continue indefinitely. For this very logical reason, the regulation provides for disparate zoning treatment.
The overall structure of the regulations further makes clear the distinction — based on the source of the raw materials at issue — between “Forestry” and “Natural Resource Based Industry,” with the latter being permitted — and then conditionally— only in open countryside and agricultural residential districts. In O-C districts, “[f]or the most part, land use compatibility is *700 achieved through spacing and buffering requirements rather than by prohibiting certain types of nuisance-prone activities.” (Town of Pierrepont Zoning Regulations, art III, § 11 [D] [4] [a].) The stated purpose for an A-R district “recognizes the value of agricultural land uses” and “is intended to protect [such] uses from detrimental intrusions that may hamper their long-term productivity and provide for all kinds of typical rural development.” (Town of Pierrepont Zoning Regulations, art III, § 11 [D] [3] [a].) The ongoing use of a mechanical wood processor, as occurring here, not limited to processing of a finite amount of wood present on the parcel, is the sort of “nuisance-prone activity” conditionally permitted only in an O-C district or falling within the “all kinds of typical rural development” conditionally permitted in an A-R district. Conversely, the stated purpose of R-R districts, “to provide for a high quality rural residential environment in suitable areas . . . intended to be composed mainly of single-family houses of conventional construction or appearance and for supporting public or semi-public uses,” is inconsistent with infinite processing of wood.
For the foregoing reasons, the court concludes ZBA’s determination that Curtis’ “firewood processing” falls within the definition of “Forestry” is contrary to the regulations and is, therefore, irrational and unreasonable, and properly annulled.
Petitioners also seek judicial review of ZBA’s determination that the topsoil screening performed by Curtis constituted “Commercial Excavation,” rather than a “Natural Resource Based Industry.” Curtis acknowledged before ZBA, however, that because “Commercial Excavation” is a conditional use in a R-R district, a site plan review before the Town Planning Board is first required. Curtis further agreed to discontinue the topsoil screening until that review is completed. In light of the fact that the Town Planning Board may decide not to permit the topsoil screening as a conditional use, thereby rendering moot any decision by this court as to whether it constitutes “Commercial Excavation,” the court declines to reach that issue at this time. In the event that the Town Planning Board approves the topsoil screening at issue as a conditional use, the issue of whether the same comprises “Commercial Excavation,” rather than a “Natural Resource Based Industry,” is preserved for further proceedings before this court.